[Kennedy v. First National Bank of Tuscaloosa.]

# Kennedy v. First National Bank of Tuscaloosa.

*Petition by fraudulent grantor for homestead exemption after annullment of conveyance on bill by creditor.*

1. *Fraudulent grantor not estopped to claim homestead exemption upon conveyance being annulled at suit of creditor.*—When a debtor has conveyed to third persons land, including his homestead interest, to hinder, delay, and defraud his creditors, and such conveyance has been set aside and avoided at the suit of creditors, such debtor then has the same right to assert his homestead exemption against such creditors as he would have had if thé conveyance had never been executed by him. (COLEMAN, J., dissenting).

2. *Estoppel of party to claim both under and against a deed.*—A party cannot claim both under and against a deed; having acquired rights under it, he is estopped to claim rights against it.

3. *In direct proceeding to condemn land, homestead right is waived, unless claimed before decree and sale.*—In a direct proceeding in equity against one who is the owner of the lands, to condemn them to sale, in which he has a right of homestead exemption, and who in making answer, sets up no claim to such exemption, and allows the lands to be condemned to sale for payment of the decree rendered against him, and they are sold thereunder, he will be held to have waived his right to claim such exemption.

4. *Effect of filing declaration of homestead claim in probate court and verified claim with levying officer.*—When the owner of land files his declaration of exemption in the probate court, it protects him against a levy upon the property claimed, unless, on a contest of his claim it is held to be invalid; or, if he has not so filed his declaration, and the homestead is levied on under legal process, he may, at any time, after the levy, and prior to the sale, file with the officer making the levy, a claim in writing verified by affidavit in the manner directed by the statute, which has the effect of protecting his property from sale, unless successfully contested in the mode prescribed. (Code 1886, §§ 2515, 2521).

5. *Exemption laws liber·lly construed.*—Exemption statutes being beneficial in their operation, and springing from a wise public policy, should be liberally construed so as to give effect to the legislative intent.

6. *Waiver of exemption rights not favored.*—Waivers of exemption rights intended for the benefit of the family relation, are not to be favored and declared, except when deliberately and fairly made.

[Kennedy v. First National Bank of Tuscaloosa.]

7. *Exemption claim filed after decree annulling fraudulent conveyance is not too late.*—Where on a bill filed by a creditor against the grantee and the debtor, to vacate a fraudulent conveyance, a decree is rendered against the complainant, which on appeal by him, is reversed, and a decree annulling the conveyance and directing sale of the land is rendered by the Supreme Court, whereupon the debtor files his petition in the chancery court for homestead exemption, or $2,000 of the proceeds of its sale, if ascertained to be of greater value than that sum; and the property afterwards brings the sum of $8,000 at a sale under the decree, and, upon the register's so reporting, the debtor files another petition claiming $2,000 of the proceeds of sale as exempt; the exemption claim was presented in sufficient time, and it was error for the chancery court to dismiss the petitions. (COLEMAN, J., dissenting).

APPEAL from the Chancery Court of Tuscaloosa.

Heard before the Hon. THOMAS COBBS.

The First National Bank of Tuscaloosa, as a judgment creditor of John S. Kennedy, filed a bill against the said John S. Kennedy and his grantees to set aside as fraudulent a conveyance of land by said John S. Kennedy to his co-respondents, and to subject said lands to the satisfaction of the judgment. The grantor debtor and his grantees answered the bill, each denying the alleged fraud; the grantor denying that he had or owned any interest in the lands conveyed, and the grantees asserting that they were *bona fide* holders of the same. On the submission of this cause, on the pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayed for. From this decree an appeal was taken to the Supreme Court, and upon the hearing of the cause in this court, the decree of the Chancery Court was reversed, and a decree here rendered granting the relief prayed for, and ordering the conveyance of the lands set aside, and directing that a sale of the same be made and that the proceeds thereof be paid in satisfaction of the judgment recovered by the First National Bank of Tuscaloosa against John S. Kennedy.

After the rendition of this decree by the Supreme Court, John S. Kennedy filed his petition in the Chancery Court, claiming certain described portions of the lands conveyed in the deed from him to his grantees, as exempt to him as a homestead, and prayed that if a homestead of the value of $2,000 could not be carved out of said property, that $2,000 from the proceeds of

the sale of said real estate be paid to him as the value of his homestead exemption. Upon the hearing of this petition, the Chancery Court decreed that the petitioner was not entitled to a homestead exemption in said property, and ordered that his petition be dismissed. From this decree of the chancellor the petitioner prosecuted an appeal to the Supreme Court. On November 25, 1892, this decree of the chancellor was affirmed. After the rendition of this decree of affirmance, the appellant filed an application for rehearing, and the opinions, as now announced by the court, are in response to this application for rehearing.

H. M. SOMERVILLE, with whom were ORMOND SOMERVILLE, WM. C. FITTS, and A. B. MCEACHIN, for the appellant.—The learned justice who wrote the opinion in this case properly states the question for decision fairly and concisely in these words : ''The meritorious question involved is the right of a judgment debtor to claim a homestead in property which has been conveyed away by him in fraud of his creditors, or in which his money is invested and the title taken in a third party with like intent.''

There is and can be no just distinction between these two alternatives stated by the court, because, where a fraudulent conveyance is taken to a son by a debtor father, the latter paying the purchase-money, it is deemed in equity to be precisely the same as if the legal title had been taken to the father.—*Elliott v. Horn*, 10 Ala. 348 (44 Am. Dec.), approved and followed in *Gilliland v. Fenn*, 90 Ala. 237.

The Alabama decisions, moreover, are uniform in holding that a family homestead may be carved out of an equitable as well as a legal title.

The case of *Smith v. Cockrell*, 66 Ala. 64, was decided in the year 1880—13 years ago, which is quite long enough to make it a rule of property. The fraudulent conveyance was there taken to the wife, the husband advancing the purchase-money. It was argued that the fraudulent conveyance cut off all right of homestead which was conferred by statute ''for the use of every family,'' and was required to be ''selected by the head of the family.''—Code, 1867, 2880. There could be no foundation for the claim of the homestead by the wife,

[Kennedy v. First National Bank of Tuscaloosa.]

which would not apply with equal force in favor of the husband if living, because the creditor pursued the property as that of the husband ; equity so regarded it, and there could be no other theory on which the creditor could be permitted to subject the land to his judgment debt. The wife was the mere agent of the statute claiming the husband's homestead to be exempt from an execution against him and not against herself.—Code, 1867, 2880. I submit, with all due respect, that the opinion of this court is opposed to the great weight of authority on the identical question decided.

These authorities are cited and reviewed by Mr. Freeman, with his usual ability and care, in *Blue v, Blue*, 87 Amer. Dec., pp. 273-275.

I quote only his conclusion from p. 274 *note* as follows : "But while there are a *few cases* to the contrary, *the great weight of authority* holds that a conveyance of property *set aside for fraud* at the suit of the grantor's creditors does not prevent *him* or his wife from afterwards claiming *a right of homestead* in the premises so conveyed. The fraudulent conveyance does not place the creditors in any better position than that *occupied before it was made*."

I refer to the authorities cited by Mr. Freeman in support of this proposition. They unquestionably sustain him.—87 Am. Dec., p. 274 *note*. See also Waples on Homestead & Ex., p. 531. The reasons for the rule above announced are ably and elaborately stated by the Supreme Court of Ohio in 14 Ohio St. 298 ; s. c., 84 Am. Dec. 378, and by the Virginia Court of Appeals in *Boynton v. McNeal*, 31 Gratt. 456, in the opinion of Judge Staples, which is quoted at large by the annotator of the American Reports, in Vol. 31, *note* on pp. 645-646, and followed by the same court in the more recent case of *Marshall v. Sears*, 79 Va. 49.

They are also stated with perspicuous clearness and accuracy in Thompson on Homestead and Exemptions, 406-409. The adjudged cases, excepting a very few referred to in Judge Staple's opinion and by Mr. Freeman, regard such creditor's suits, as in fact what they legally and logically are, controversies between *the creditor and the debtor*, and *not* between the fraudulent grantor and grantee.

The opinion of Justice Coleman is based on the latter

[Kennedy v. First National Bank of Tuscaloosa.]

view, which, I respectfully submit, is opposed to the weight of authority, and also to that of reason, as it seems to me.—*Humes v. Scruggs*, 64 Ala. 48-49.

A fraudulent conveyance is valid between the immediate parties, where no creditor is concerned. If the contest were one between the grantor and grantee, the test applied in the opinion would be fatal to any assertion of homestead right or claim on the part of the grantor. The law would hold the conveyance void for fraud, but would leave the parties where it found them, if *in pari delicto*.

But when a creditor intervenes, he plants himself on two propositions which he must sustain in order to win : (1) That *the property is equitably that of the debtor;* and (2) That the conveyance is *totally fraudulent and void* as to creditors.

The creditor cannot assume the repugnant attitude of asserting, in one breath, the nullity of the conveyance, and, in another breath, its validity by claiming a right under it. He cannot, in other words, impeach the debtor's right to claim a homestead on the ground that he (the debtor) has no title, when the entire case was based on the postulate that he did have a title. If the fraudulent conveyance is once set aside for fraud it stands as if it had never existed, and the creditor is *estopped* to assert anything to the contrary.—*Ruoh v. Hooke,* 3 Lea 302, S. C. 31 Amer. Rep. 642, and *note,* p. 645 (64 Ala. 48–49). The grantee in the fraudulent deed makes no contest as to Kennedy's right of homestead, and never has made any.

The court will not undertake to raise the contest for him, there being no execution against *his* property, and no state of the pleadings that would justify such an issue in his favor. The whole contest, under all the authorities, except an insignificant minority, is one between the First National Bank, of Tuscaloosa, as creditor, and Jno. S. Kennedy as debtor.

The law favors the right of homestead, and authorizes a liberal construction of all statutes designed to secure such a humane provision for unfortunate debtors. The right is created for the benefit of the family, and the husband is the head of the family.

The creditor would not be entitled to subject the homestead to his claim, if the legal title had been con-

veyed to Kennedy himself ; and if, moreover, Kennedy had owned the legal title and conveyed it away in trust for his wife, or himself, it would not be fraudulent under all our decisions from *Fellows v. Lewis,* 65 Ala., down to *Alley v. Daniels,* 75 Ala., and other later decisions.—66 Ala. 64. The rule now generally admitted by judges, jurists and standard text-writers all over the country, is that when a creditor assails a conveyance as fraudulent and void, and the court at his instance so stamps it and sets it aside, he cannot be afterwards heard to assert the validity of the conveyance so far as to defeat the humane provision made by law to secure a homestead for the debtor whose land he is attempting to seize for a debt. The most reputable American courts by by singular unanimity lay on him the wholesome law of estoppel which closes his mouth against making such a claim. The rule as to the *wife's dower* in cases of fraudulent conveyance is strictly analagous to that of homestead. Where the conveyance is annulled for fraud at the instance of a creditor, the wife is permitted to come in and claim her dower, although the conveyance be binding as between *her* and the *grantee.* Following the general line of authorities, this court so declared the law in *Humes v. Scruggs,* 64 Ala. 48–49 and in doing so *adopt precisely the line of reasoning urged above as to estoppel.* Why adopt such a rule as to *dower,* and repudiate it as to the *homestead,* when the chief reason on which each is founded is the same?—*Cox v. Wilder,* 2 Dillon (C. C.) Rep. 45 ; *Blue v. Blue,* 87 Amer. Dec. p. 274 *note;* Waples on Homestead & Ex., p. 531–532 ; Thompson on Homestead, §§ 408–409 ; *Smith v. Cockrell,* 66 Ala. 64; *Marshall v. Sears,* 79 Va. 49 ; (approving *Boynton v. McNeal,* 31 Gratt. 436 ; S. C. 31 Amer. Rep., 642, *note*) ; *Hatcher v. Crews,* 83 Va. 371 ; *Sears v. Hanks,* 14 Ohio St. 298 ; (S. C. 84 Amer. Dec. 378) ; *Horton v. Kelly,* 40 Minn. 193 (in effect) overruling 12 Minn. 60 ; *Dortch v. Benton,* 98 N. C. 190 ; *Edmondson v. Meacham,* 50 Miss. 34, (referred to with approval in *Smith v. Cockrell,* 64 Ala. p. 76) ; *Jaffers v. Aneals,* 91 Ill. 488 ; *Cox v. Wilder,* 2 Dillon (C. C.) Rep. 45 ; *Meinzer v. Diveling,* 66 Mo. 375 ; *Vogler v. Montgomery,* 54 Mo. 577 ; *Humes v. Scruggs,* 64 Ala. 48–49; *Smith v. Rumsey,* 33 Mich. 184.

There is no force whatever in the contention that the claim of homestead exemption came too late. The ex-

emption of a homestead is secured by a Constitutional provision, which cannot be overridden by legislative enactment, even if such a thing were attempted, which is not the case.

Our Supreme Court has decided that the exemption law must be liberally construed in favor of the claimant. *McGuire v. VanPelt*, 55 Ala. 344. And it would be a narrow construction indeed against the claimant which would deprive him of the right to present his claim at any time before a sale. No such construction has been given the law in this State, but it has been uniformly held that the right of exemption could be exercised at any time before a sale.—*Gresham v. Walker*, 10 Ala. 370 ; *Simpson v. Simpson*, 30 Ala. 225; *Bell v. Davis*, 42 Ala. 460; *Martin v. Lile*, 63 Ala. 406 ; *Right v. Grabfelder*, 74 Ala. 460 ; Code of Alabama, Sec. 2521.

There are two cases in this State which have been cited in opposition to this manifest construction of the law, but they are not really in conflict with it, but inferentially follow in the same line. The first of these is *Sherry v. Brown*, 66 Ala. 51, which holds that where land is levied on by a constable, under an execution from a justice's court, a claim of homestead exemption must be made before an order is granted to sell the land, or it will be waived. The reason given is, that the statute provides that the Circuit Court shall order a sale of the land levied on by the constable, "if no sufficient objection is made," and that the right of homestead is waived or lost because the claimant did not present his claim "as sufficient objection to the granting of the order of sale by the court."

The second case referred to is that of *Toence v. Moog*, 78 Ala. 558, which modifies and virtually overrules *Sherry v. Brown*. It decides that Sections 2515 and 2521 of the Code do not apply to cases like *Sherry v. Brown* and the case at bar, in which the claim of exemption is allowed to have its full effect, although not asserted in the manner prescribed in either of these sections.

In both of these cases the order of sale made by the Circuit court is treated as a condemnation of the land to the payment of the debt, and as a proceeding equivalent in legal effect to a sale.

The decision of *Simpson v. Simpson supra* contains a lucid and correct exposition of the law of exemption,

Chief Justice Rice explains that the sections of the Code, to which we have referred, have no other effect upon the exemption laws than to regulate the liability of the sheriff in making a levy. Of course a claim of exemption which was filed pursuant to either section 2515 or 2521 would be regular in form, but so far as the mere right of exemption is concerned, the statutes are simply declaratory of the general law. The claim in this case was interposed in exact pursuance of Section 2521 of the Code and from the very nature of the case could not have been presented sooner.

The Constitution of the State exempts the homestead from sale under execution or any other process from a court.—Code p. 42, Sec. 2, and Section 2507 of the Code is the first part of the legislative machinery to carry the exemption into effect. Sec. 2515 points out a method of presenting a claim before the levy is made, and Sec. 2521 after levy. The latter method was followed by the claimant in this case. In addition to the Alabama decisions cited, the decisions of other courts, cited below, are relied on to support the following propositions :

First.—That the claimant is entitled to his homestead exemption ;

Second.—That the claim does not come too late.—*Sears v. Hanks*, 14 Ohio State 298 ; 84 Am. Dec. 378 ; *Close v. Sinclair*, 38 O. St. 530 ; *Frost v. Shaw*, 3 0 St. 270 ; *Hatcher v. Crews*, (Va.) 5 S. E. Rep, 221 ; *Wood v. Turner*, (S. C.) 7 S. E. Rep. 74 ; *Leopola v. Krause*, 95 Ill. 440 ; *Huas v. Shaw*, 91 Ind. 384 ; Amer. & Eng. Enc. Law Vol 9 p. 508 and notes. The homestead claimed here was conveyed by the present claimant in fraud of his creditors, and while it stood thus, he could assert no right of exemption. But the fraudulent sale was set aside by the creditors, and the claimant then presented his claim of exemption as the Code directs. He could not have asserted the claim sooner, and to hold that it came too late, when in point of fact it came as soon as it could be held allowable, would be to deny him the right entirely, and to decide in an indirect way, that exemptions cannot be claimed out of property fraudulently conveyed, notwithstanding the fact that the fraudulent conveyance was set aside at the instance of creditors.

CABANISS & WEAKLEY, for the appellee.—1. The rule

of law, applicable alike to proceedings in equity and actions at law, is, that after a judgment or decree *in rem* against him, it is too late for a party to the record to assert any claim to the property, either as a homestead or otherwise, which might have been made and determined in that suit.—*Rector v. Rotton*, 3 Neb. 178 ; *Lee v. Kingsbury*, 13 Tex. 68, s. c. 62 Am. Dec. 546 ; *Tadlock v. Eccles*, 20 Tex. 791, s. c. 73 Am. Dec, 213 ; *Larson v. Reynolds*, 13 Iowa 582, s. c. 81 Am. Dec. 444 ; *Wright v. Dunning*, 46 Ill. 275 ; *Miller v. Sherry*, 2 Wall. 237 ; *Voorhees v. Bank*, 10 Pet. 449 ; *Slaughter v. Detiney*, 15 Ind. 49 ; *Perkins v. Bragg*, 29 Ind. 507 ; *Emburg v. Conner*, 3 N. Y. 511, s. c. 53 Am. Dec. 325 and note ; Thompson on Homestead and Exemptions §§ 715-726 ; *Henderson v. Still*, 61 Miss. 391.

The judgment of a court upon the merits is conclusive as well against defences which might have been, as those which were, actually, made.—*Tankersly v. Pettis*, 71 Ala. 179.

2. The filing of the bill in this case and the service of process thereon, gave an inchoate lien on all the property sought to be condemned thereby, which lien was perfected and completed by the final decree in the cause, and could not be divested or defeated by any subsequent proceeding, so long as such decree stands unreversed.— *Hines v. Duncan*, 79 Ala. 116 ; *Evans v. Welch*, Ib, 250 ; *Miller v. Sherry*. 2 Wall. 237.

3.. Homestead exemptions, as well as exemptions of personal property, have always been construed by the courts of this state as mere personal privileges, which may be and are held to be waived unless claimed at the time and in the manner prescribed by law.—*Stanley v. Ehrman*, 83 Ala. 215 ; *Sherry v. Brown*, 66 Ib. 51 ; *Martin v. Lile*, 63 Ib. 409 ; *Randolph v. Little*, 62 Ib. 396 ; *Daniels v. Hamilton*, 52 Ib. 105 ; *Bell v. Davis*, 42 Ib. 460 ; *Toenes v. Moog*, 78 Ib. 558 ; *Seals v. Pheiffer*, 84 Ib. 359.

4. The value of the homestead in this case being more than $2000., and there being no machinery provided by law for the separation of the homestead right, where it has been sold under a decree of court, the claim of homestead exemption must fail.—Code (1886) Secs. 2534-2535 ; *Miller v. Marx*, 55 Ala. 322 ; *Watts v. Burnett*,

[Kennedy v. First National Bank of Tuscaloosa.]

56 Ib. 340 ; *Garner v. Bond*, 61 Ib. 84 ; *Martin v. Lile*, *supra*.

5. As a fraudulent deed passes a good title as between the debtor and grantee, the former is not entitled to a homestead or exemption out of the property.—Bump on Fraud. Con. p. 482 ; *Sumner v. Sawtelle*, 8 Minn. 309 ; *Stancill v. Branch*, 1 Phillips 306 ; *Getzler v. Sarom*, 18 Ill. 511 ; *Keating v. Keeper*, 5 N. B. R. 133 ; *In re Dillard*. 9 N. B. R. 8 ; *Gibbs v. Patten*, 2 Lea. 180 ; *Piper v. Johnson*, 12 Minn. 60 ; *Stevenson v. White*, 87 Mass. 148 ; *In re Graham*, 2 Biss. 449 ; Huey's Appeal 29 Pa. St. 219 : *Chambers v. Sollie*, 29 Ark. 407 ; *Currier v. Sutherland*, 54 N. H. 478 ; *McClurg v. Johnston*, (Tenn) 2 Law & Eq. Rep. 78.

6. Where a bill is filed to set aside a fraudulent conveyance no affirmative relief can be granted to the defendant, in the way of a homestead exemption or otherwise, unless it is claimed by cross–bill or is set up in the answer as an affirmative defense.—Wait on Fraud. Con. § 166 ; *Kellog v. Aherin*, 48 Iowa 299.

7. The case of *Sears v. Hanks*, 14 Ohio St. 298 was decided upon an Ohio Statute and in *Hatcher v. Crews*, (Va.) 5 S. E. 221, the decree did not condemn the land to sale, but simply annulled the conveyance. In the case at bar the decree of the Supreme Court in the main case declared the land—all of it—subject to the Bank's demand and *ordered it sold for the Bank's benefit*.

ON APPLICATION FOR REHEARING.

McCLELLAN and HARALSON, JJ.—The authorities are well nigh uniform in support of the proposition, that where there is a fraudulent conveyance of property constituting or including the homestead, which is subsequently annulled at the suit of a creditor, the grantor is not estopped as against the creditor to assert his right of homestead in the premises. And the reason for this doctrine is found in the creditor's want of interest in that which is not liable for debt. Thus, it is said by Judge Thompson : "It has been frequently held that a conveyance by husband and wife of real estate in which the wife has an inchoate right of dower, subsequently set aside as being fraudulent as to creditors, will not operate to bar an assignment of dower. The theory of the case appears to be that a conveyance thus set aside

at the suit of creditors, for fraud, is to be treated as a mere nullity—as though it had never been made—and that the wife's inchoate right of dower is, therefore, wholly unaffected by it; that whilst, the conveyance subsisting, she would be estopped to assert her right of dower as against the fraudulent grantee, yet, the conveyance being annulled, the creditors of her husband can, as against her, derive no advantage from it. *

* * * * * Do the same principles apply also to to the right of homestead? Most of the cases answer this question in the affirmative, and hold that a conveyance set aside for fraud, at the suit of the husband's creditors, does not estop the grantor, or his wife, from claiming homestead in the premises thus conveyed. Such a conveyance does not constitute an abandonment of the homestead such as opens it to creditors. Two general reasons for this rule may be deduced from the cases : First, that the homestead privilege is created for the benefit of the wife and children, as well as for that of the husband and father; and, therefore, it is not right that the former should be prejudiced by the wrongful act of the latter. Second, that, the conveyance being void as to creditors, it stands as to them as though it had never been made. If it had not been made, the debtor, or his wife, could have asserted the right of homestead in the premises against them; and they can not assume the inconsistent positions, the nullity of the conveyance and claiming a right under it. In other words, a fraudulent conveyance does not enlarge the rights of creditors, but leaves them to enforce the rights they would have had if no such conveyance had been made. Expressed in still another way, the interest which a creditor has in the property by virtue of his lien is a *derivative interest*, proceeding from the debtor and depending upon his title. Hence a creditor cannot acquire a right under the debtor's title and at the same time impeach that title. He cannot sell, under his execution, the debtor's title, and at the same time deny the debtor's right of homestead on the ground that the latter has no title. If the premises are actually occupied by the debtor as a homestead, it can make no difference, so far as the creditor is concerned, by what sort of title the debtor occupies. By attempting the sale the creditor affirms that the debtor has a salable interest; and the

law means that that interest should not be taken away, and the debtor disturbed in his possession by sale under judicial process. If a conveyance of land is procured by an insolvent debtor to his wife and children, it will be treated in equity, as having been made to himself, and, if with his family he occupies it as a homestead, it will be protected as such ; since the title which, if the property were not homestead, could be subjected by creditors is sufficient to support the homestead right. Besides, the fraud does not consist in conveying the homestead ; for the creditor could not have reached that with his execution had the debtor retained it. The fraud consists in conveying the other part of the land that the creditor can reach by his execution. But as to the homestead he has no concern. That matter rests between the fraudulent grantor and his grantee. This appears to be the most satisfactory ground upon which the rule has been placed. It resolves itself into this : that as to exempt property there are within the meaning of the statute of frauds, *no creditors.* Statutes creating exemptions were not designed to imprison the debtor in his homestead, nor to fetter the transfer of his chattels. There being, then, no legal restraint upon the debtor against conveying or selling such property, * * * * the motives with which such transfers are made are of no concern whatever to the creditor. If he procures a conveyance to be set aside as fraudulent, he takes what is vendible under his execution ; the title to the rest is a question to be disputed between the debtor and his grantee.'' Thompson on Homesteads & Exemptions, §§ 405, 408-412. The same views are expressed by Waples in his work on Homesteads & Exemptions, pp. 531-534. And in succeeding sections Judge Thompson discusses the few adjudged cases which are supposed to announce a contrary doctrine, and demonstrates, we think, that they either turn upon statutory considerations, and are, therefore, not in reality opposed, except perhaps in matters of *dicta* to the views expressed in the text, or proceed upon some misconceived idea of the abstract rights of the creditor and grantor-debtor in such cases, and are, therefore, wholly unsound. The great majority, indeed nearly all, of the adjudged cases fully support the text we have so fully quoted, as will appear from the following collation of some and citation of most of them. In the case of *Smith v. Rumsey*, 33 Mich. 183, it is said

[Kennedy v. First National Bank of Tuscaloosa.]

(p. 191) by the Supreme Court of Michigan: "The homestead was not subject to execution. * * * It was, however, grantable. It was capable of transfer by deed executed by husband and wife, and since creditors could enforce no process against it, could no more pursue it for their debts against him (the fraudulent grantor), than they could pursue for the same purpose the absolute property of the government, the law will not allow it to be said that the transfer of it, if any were made, operated to defraud creditors. When the law declares that a debtor's disposal of his property with intent to defraud his creditors shall be voidable at the instance of his creditors, and at the same time declares that specific property of the debtor shall be exempt as against his creditor's adverse claims, the provisions are *in pari materia*, and must be construed together, and the latter provision must be held to exempt this exempt property from the operation of the former provision. Certainly it would be very inconsistent to say that a debtor's disposal of property, and which property, in so far as the creditor and his claims are concerned, may be said to have no existence at all, is a fraud upon the creditor." To the same effect it is said by the Supreme Court of Maine: "No creditor *can be*, in legal contemplation, defrauded by a mere conveyance, made by his debtor, of any of his property which such creditor has no right by law to appropriate, or even to touch, by any civil process."—*Legro v. Lord*, 10 Me. 165. And by the Supreme Court of Wisconsin: "A conveyance of homestead, by the husband to the wife, cannot be held fraudulent as to creditors, for the reason that, being exempt, it was no more beyond their reach than before."—*Pike v. Miles*, 23 Wis. 168. And this general principle is fully recognized in our own decisions.—*Fuller v. Whitlock*, 99 Ala. 411, 415, and cases there cited. Judge Freeman, in a note to *Blue v. Blue*, 87 Amer. Dec. 268, 274, states the doctrine and cites the authorities as follows: "In New Hampshire it is held that a levy on premises in possession of the execution debtor claiming a homestead therein, without any application on his part for an assignment of homestead to him, is valid against the grantee of the debtor whose deed is fraudulent and void as to creditors, although the value of the premises does not exceed the amount exempted by law from attachment

and levy.—*Currier v. Sutherland*, 54 N. H. 475. But while there are a few cases to the contrary, the great weight of authority holds that a conveyance of property set aside for fraud at the suit of the grantor's creditors does not prevent him or his wife from afterwards claiming a right of homestead in the premises so conveyed. The fraudulent conveyance does not place the creditors in any better position than they occupied before it was made. The homestead still remains exempt.—Freeman on Executions, § 138; *Dearman v. Dearman*, 4 Ala. 521; *Vaughan v. Thompson*, 17 Ill. 78; *Muller v. Inderreiden*, 79 Ill. 382; *Lishy v. Perry*, 6 Bush. 515; *Kuevan v. Specker*, 11 Bush. 1; *White v. Givens*, 29 La. Ann. 571; *Succession of Cottenham*, *Ib.* 669; *Legro v. Lord*, 10 Me. 161; *Castle v. Palmer*, 6 Allen, 401; *Smith v. Rumsey*, 33 Mich. 183; *Smith v. Allen*, 39 Miss. 469; *Pemington v. Seal*, 49 Miss 518; *Edmonson v. Meacham*, 50 Miss. 34; *Vogler v. Montgomery*, 54 Mo. 577; *Rankin v. Shaw*, 94 N. C. 405; *Sears v. Hanks*, 14 Ohio St. 298; *Bank v. Henderson*, 4 Humph. 75; *Wood v. Chambers*, 20 Tex. 247; *Cox v. Shropshire*, 25 Tex. 113; *Foster v. McGregor*, 11 Vt. 595; *Danforth v. Beattie*, 43 Vt. 138; *Shipe v. Repass*, 28 Gratt. 716; *Boynton v. McNeal*, 31 Gratt. 456; *Marshall v. Sears*, 79 Va. 49; *Bond v. Seymour*, 1 Chand. 40; *Dreutzer v. Bell*, 11 Wis. 114; *Pike v. Miles*, 23 Wis. 164; *Murphy v. Crouch*, 24 Wis. 365; *Bean v. Smith*, 2 Mason, 252; *Cox v. Wilder*, 2 Dill. 45; *Smith v. Kehr*, 2 Dill. 50; *McFarland v. Goodman*, 6 Bissell, 111; Smythe on Homesteads and Exemptions, § 555." And it is said in Freeman on Executions: "But it is evident that creditors cannot be defrauded, hindered or delayed by the transfer of property which, neither at law nor in equity, can be made to contribute to the satisfaction of their debts. Hence, it is almost universally conceded that property which is, by statute, exempt from execution, cannot be reached by creditors on the ground that it has been fraudulently conveyed." § 138. In *Sears v. Hanks, supra,* the plaintiffs were creditors of the grantor in a fraudulent conveyance which had been set aside at their instance. The grantor-debtor then claimed homestead in a part of the land covered by the conveyance, and his claim was allowed, the court saying: "The rights of the plaintiffs in this action are only those which belong to creditors seeking

to set aside a voluntary conveyance of their debtor, made in fraud of their rights, and to enforce their judgment liens against the property so conveyed. Their claim is not under or through the fraudulent conveyance, but adverse to it; and when at their suit it has been set aside, and declared wholly void as against them, they cannot be allowed as creditors to set up this void conveyance, against which they are claiming, for the purpose of enlarging their rights and remedies against their debtor, or for the purpose of estopping him from the assertion of the rights which he would otherwise have against them. As between debtor and creditor, the deed is simply void, and cannot, therefore, affect the rights of either. A judgment creditor's lien is only upon the property of his debtor; and the purchaser at a sale or execution takes in general only the debtor's title. If the debtor has no title or interest in the property levied on, there is nothing for the creditor to sell; and it is not competent for the creditor, while selling the alleged title of the debtor, to deny his right to homestead on the ground that he has no interest in the property about to be sold. If he has an interest in the homestead property which the creditor can sell, he has interest enough to secure his homestead from sale. The validity of the fraudulent conveyance, as between the parties to it, is no concern of the creditor when it has been set aside as to him. All he can ask is that, as against him, it shall confer no right on any one." And so it is said by Judge Dillon, in *Cox v. Wilder*, 2 Dill. 45, 49, as to the right of such grantor to claim homestead, the fraudulent conveyance having been annulled : "Except for the deed to Wilder the bankrupt would be entitled to the exemption. But, as we have seen, the assignee does not and cannot claim under that deed, but in hostility to it ; and when it is avoided and the title placed in the assignee, I do not think (in view of the purposes of the exemption) that the husband is estopped, as against the assignee, to claim the right to the homestead, or the value, to the extent given by the statute. This view does not make the estate any less than if the fraudulent conveyance had not been made, while the opposite view gives the creditors a profit out of the attempted fraud, at the expense of the family for whose benefit the exemption is mainly if not wholly provided."

The Virginia Court of Appeals, in *Marshall v. Sears*, 79 Va. 49, following and reaffirming two earlier decisions of that court, has this to say: "The only question, therefore, involved upon this appeal is the right of a fraudulent grantor, when his conveyance has been set aside to assert his claim of homestead in the property embraced in the deed. And as this point has been twice passed upon by this court, we are saved the necessity of making any elaborate review of the cases, or of the reasons upon which they are founded. In the case of *Shipe, Cloud & Co. v. Repass et als.*, 28 Gratt. 729, Judge Staples, speaking for a majority of the members of the court then sitting, says: "In Smyth on Homestead and Exemption, § 469, it is said: 'The general rule seems to be, the fraudulent conveyance of the homestead by a bankrupt does not estop him from claiming such homestead in the premises after the conveyance has been annulled and decreed as fraudulent and void as to creditors.'" And after quoting decisions from other states to the same effect, that learned Judge proceeds as follows: "It must be borne in mind, however, this is a controversy between the creditors on the one hand, and the debtor and fraudulent alienee on the other. What are the rights of the former in such a controversy? Simply to have the deed annulled; to be placed precisely in the same position they occupied before. Can they claim more? If the debtor has a valid claim to the homestead as against them, before the execution of the deed, how is their condition improved by the deed? Their judgments are only a lien upon the property of the debtor. It is not competent for them, while selling that property, to insist that it is not the debtor's property. The validity of the fraudulent conveyance as between the parties is no concern of the creditors. All they can claim is, that as against them it can confer no rights upon any one. If any one can set up the estoppel it would seem to be the fraudulent grantee. But in this case he asserts no such claim. But the creditors, through him, seek to appropriate that the law does not allow them, nor the deed confer upon them. If the debtor makes a fraudulent conveyance of property in which he has a right of homestead under the constitution, what is it to the creditors so far as the homestead is concerned? When the conveyance is annulled, and

they are restored to their own, they have obtained all they can justly claim. They cannot be heard in one breath to say that the conveyance is a nullity as to them, and in the next to assert it confers upon them new rights because it is valid between the parties." And he comes to the conclusion that where there is a fraudulent conveyance of property, which is subsequently annulled at the suit of the creditor, the grantor is not estopped as against the creditor to assert his right of homestead in the premises.

"In *Boynton et als. v. McNeal et als.*, 31 Gratt. 459, the same learned Judge, speaking for a majority of the whole court, after a careful re-examination of the whole subject, announces the same doctrine, and quotes from Thompson in his book on Homestead Exemptions, who gives as the reasons for the rule, to be deduced from the cases: First. That the homestead privilege is created for the benefit of the wife and children as well as that of the husband and father, and therefore it is not right that the former should be prejudiced by the wrongful act of the latter; and, second, that the conveyance being void as to creditors, it stands as to them as though it had never been made. Without undertaking to multiply authorities, or to prolong the discussion, we may say that the rule, and the reasons for it, heartily commend themselves to our approval, and are in accord with the humane policy of the homestead act, which seeks to protect the family of the debtor from the inhumanity which would deprive its weak and dependent members of a shelter. And it cannot be said with propriety that the application of this rule will work a fraud upon creditors, for no creditor can be in any wise injured, in legal contemplation, by any dealing of the debtor with property which the law has removed, or, what amounts to the same thing, has authorized the debtor to remove beyond his reach.—*Sears et als. v. Hanks et als.*, 14 Ohio St. R. 298; *Cox v. Wilder*, 2 Dill. 45; *Crummen v. Bennett et als.*, 68 N. C. 494."

And this doctrine was again reaffirmed in the later case of *Hatcher v. Crews* Admr., 83 Va.. 371. The same doctrine has the support of the supreme court of North Carolina, which, by Merriam, J., said: "It was decided in *Crummen v. Bennett*, 68 N. C. 494, that a party who conveyed his lands to another in fraud of his cred-

itors, did not thereby forfeit his homestead, and leave it subject to be sold under execution to pay his debts, because as to it the conveyance was not fraudulent—the creditor could not have sold it if the conveyance had not been made—it was not subject to be sold under execution; in that respect he suffered no detriment. The fraud consisted in conveying the land—that part of it not embraced by the homestead; this was subject to be sold under execution, and the conveyance as to it was, therefore, fraudulent and void as to the creditor. The latter had no interest as to the homestead; that was a matter between the debtor and the person to whom he made the conveyance.—*Duval v. Rollins*, 71 N. C. 218; *Rankin v. Shaw*, 94 N. C. 405, and cases there cited."—*Dortch v. Benton*, 98 N. C. 190.

So also it is held in Missouri, where it is said: "It appears to be the received opinion that neither a fraudulent conveyance nor an act of bankruptcy on the part of the head of the family will produce a forfeiture of the benefits of the homestead exemption," and further that if the conveyance attacked for fraud was made in good faith, and valid, a sale on execution against the grantor would convey nothing; but that if it was fraudulent, as insisted, by the execution creditor, then the title was in the defendant, and the homestead law obtained, notwithstanding the invalid conveyance, and exempted the land from execution.—*Vogler v. Montgomery, et al.*, 54 Mo. 577, 584; *State ex rel. v. Diveling*, 66 Mo. 375.

Mississippi is in line with this view, holding that if the facts exist which otherwise entitle one to homestead, the right is not lost, nor is he estopped to assert it, by reason of his having executed a fraudulent conveyance subsequently set aside. — *Edmonson v. Meacham*, 50 Miss. 34.

And so in Minnesota, this doctrine is upheld, the Supreme Court of that State saying, with reference to the idea of an estoppel upon which the contrary view is rested: "Estoppels by deed bind only parties and privies, and must be mutual. The plaintiff claims in hostility to the alleged fraudulent conveyance, and if it be set aside in his favor as fraudulent and void, it cannot be considered still in force as to any of the parties to it, so as to prevent the defendant and his wife from asserting the same rights for the protection of his homestead

as if the alleged fraudulent deed had never been executed; and the dower interest of the wife would continue in force as if no such conveyance had been made. *Malloney v. Horan*, 49 N. Y. 111, 119; *Elmendorf v. Lockwood*, 57 N. Y. 322; *Roberts ads. Jackson*, 1 Wend. 478, 481; *Dugan v. Massey*, 6 Bush 81; *Robinson v. Bates*, 3 Met. 40; *Sheldon v. Weeks*, 7 N. Y. Leg. Obs. 57, 60; Bump. Fraud. Conv., 485; Waite Fraud. Conv., § 46." *Horton v. Kelly et al.*, 40 Minn. 193, 195.

The doctrine is thus stated in Waite on Fraudulent Conveyances, § 46: "It being a test of a fraudulent transfer that the property alienated must be of some value out of which the creditor could have realized the whole or a portion of his claim, it would seem to follow logically that exempt property is not susceptible of fraudulent alienation. As the creditor possesses no right to have that class of property applied in satisfaction of his claim while the debtor owns it, and would be powerless to seize or appropriate it for that purpose were it restored to the debtor's possession, the legitimate deduction would seem to be that the creditor's process could not be fastened upon it in the hands of the debtor's alleged fraudulent vendee. As to alienations of exempt property there may be a bad motive but no illegal act. When a fraudulent transfer has been avoided, it leaves the creditor to enforce his remedy against the property in the same manner as if the fraudulent transfer had never been executed. The creditor cannot ask to be placed in a better position in respect to the property than he would have occupied if no fraudulent bill of sale had ever been made. And it seems from the current of adjudications that a conveyance of lands set aside for fraud at the suit of creditors, does not estop the grantor from claiming a homestead in the premises thus conveyed. Such a conveyance does not constitute an abandonment of the Homestead so as to open it to creditors."

The like view is taken by the Supreme Court of Illinois, where, upon setting aside a conveyance of land embracing the homestead made by Mrs. Jaffers as fraudulent and void as against creditors, the court said: "As Mrs. Jaffers still remained in possession of the lands as her homestead and that of her minor children, residing with her, it was just and proper, after cancelling the deed that the court should decree that home-

stead should be first assigned to her in the premises."
*Jaffers v. Aneals*, 91 Ill. 487, 493.

And the general principle, of which the rule that a
fraudulent grantor may claim homestead and his wife
dower in the lands attempted to be conveyed after the
conveyance is set aside at the suit of creditors is but an
exemplification or application, is thus stated by Mr.
Bump :   "If creditors avoid the conveyance, the law re-
mits and restores the grantee to his previously existing
legal rights.   A prior interest will not be deemed to be
merged in an estate which has been lost, for the law will
not consider a deed to be in force which has been
avoided.   When a grantee loses an interest which he
obtained fraudulently, it is to him as if it had never ex-
isted.   This gives the statute its proper legitimate ef-
fect, permits the grantee to hold nothing by his fraudu-
lent contract, and the creditors to take all their debtor
fraudulently conveyed, and nothing more.   The very
avoiding of the fraudulent conveyance revives and re-
news the former interest and restores the parties to their
original position.   If the transfer consists of a release of
an equity of redemption, the mortgage is revived when
it is set aside.   Although an indorsement on a mort-
gage is fraudulent, yet when that is set aside the mort-
gage will be valid.   The dower of the debtor's wife will
be revived when a deed from the grantee to her is va-
cated.   If the grantee purchases a prior mortgage he
will be entitled to retain it after the fraudulent transfer
has been set aside.   A fraudulent mortgage does not ex-
tinguish the debt for which it was given, and if the se-
curity fails the debt remains in full force.   As it did not
arise *ex turpi causa*, it can not be merged by anything
merely collateral."

To our minds this doctrine that a fraudulent grantor
may claim homestead after the conveyance is annulled
has received the sanction of this court.   Of it Judge
Stone, speaking for the court in *Fellows v. Lewis*, 65 Ala.
343, 354, said :   "This question has been a great many
times before the courts of the country, and, in a large
majority of cases, the ruling was against the right of
the creditor to subject the homestead, merely because its
owner and occupant had conveyed his right to another,
even though the conveyance was voluntary, or made
under circumstances which would ordinarily stamp it as

fraudulent. There can be no fraud, unless there are claims and rights which can be delayed and hindered, and which, but for the conveyance, could be asserted. The law takes no cognizance of fraudulent practices that injure no one. Fraud without injury, or injury without fraud, will not support an action. Unless they co-exist, the courts are powerless to render any relief.— *Castle v. Palmer*, 6 Allen 401 ; *Legro v. Lord*, 10 Me. 161; *Foster v. McGregor*, 11 Ver. 595 ; *Danforth v. Beattie*, 43 Ver. 138 ; *Crummen v. Bennett*, 68 N. C. 494 ; *Sears v. Hanks*, 14 Ohio St. 298 ; *Vaughan v. Thompson*, 17 Ill. 78 ; *Muller v. Inderreiden*, 79 Ill. 382 ; *Anthony A. C. Co. v. Wade*, 1 Bush, Ky. 110 ; *Morton v. Ragan*, 5 Bush, Ky. 334; *Lishy v. Perry*, 6 Bush, Ky. 515 ; *Kuevan v. Specker*, 11 Bush, Ky. 1 ; *Vogler v. Montgomery*, 54 Mo. 577 ; *Smith v. Rumsey*, 33 Mich. 183 ; *Hugunin v. Dewey* 20 Iowa, 368 ; *Dreutzer v. Bell*, 11 Wisc. 114 ; *Pike v. Miles*, 23 Wisc. 164 ; *Murphy v. Crouch*, 24 Wisc. 365 ; *Succession of Cottingham*, 29 La. Ann. 669 ; *Edmondson v. Meacham*, 50 Miss. 34 ; *Wood v. Chambers*, 20 Texas 247; *McFarland v. Goodman*, 6 Bissell 111 ; *Cox v. Wilder*, 2 Dillon 45 ; *Smith v. Kehr, Ib.* 50.. The following cases hold the contrary doctrine ; but in some of them, it will be seen, the facts were different : *Gotzler v. Saroni*, 18 Ill. 511 ; *Currier v. Sutherland*, 54 N. H. 475 ; *Huey's Appeal*, 29 Penn. St. 219.

''In the cases cited above, negativing the liability of the homestead which has been fraudulently conveyed, the reasons given are substantially as follows: The property, homestead, is not liable to seizure under execution, and, therefore, a conveyance of it is a question in which the creditor has no interest. It was not liable, before conveyance, to the claim he asserts ; and the conveyance, though fraudulent, puts the creditor in no better condition than he was in before. If the conveyance is set aside as fraudulent, this leaves the homestead as if no attempt had been made to convey it, so far as any claim can be asserted by the creditor. It is void as to him, to all intents and purposes. · He cannot be heard to say, in one and the same breath, that the conveyance is void, in its attempt to divest title out of the debtor, but is valid in destroying the homestead right. He cannot claim both under and against the conveyance ; under it, as a valid parting with the homestead right ; against

it, as an abortive effort to pass title out of the debtor. It must stand, as to him, as if no conveyance had been attempted.''

And to like effect is the case of *Smith's Extr. v. Cockrell*, 66 Ala. 64,

The right of a husband to homestead in lands which he has conveyed in fraud of his creditors, after such conveyance has been annulled at their suit, stands obviously upon the same plane so far as the idea of estoppel goes as the right of a wife to claim dower in lands after a conveyance thereof executed by the husband to her in fraud of his creditors has been avoided for that reason. So it is declared by Judge Thompson, (Homestead & Exemptions, §§ 405, 408) and by Judge Dillon (*Cox v. Wilder*, 2 Dill. 45) ; and so it has been treated and accepted by this court.—*Fellows v. Lewis*, *supra*. And upon some, but not all, of the considerations which let in a claim of homestead in such cases, it has been expressly determined by this court that the wife's right to dower is not impaired by such a conveyance after the avoidance thereof by creditors, the court saying: ''It is insisted further, however, that petitioner, Mrs. Scruggs, has no right to dower of this land, because by the conveyance of her husband to her; which though voidable and decreed to be void as to these appellants; was valid between the parties to it, her right as dowress became merged in the fee thus transferred to her, and was extinguished. But the contention, in this cause, is between petitioner and appellants ; and in respect of the latter it has been decided, that the conveyance to the petitioner is inoperative and null. In favor of contestants, the title must be regarded as having remained in John W. Scruggs until it was devolved on his assignee in banktruptcy. This is the basis on which alone the the claims of appellants are founded : and they cannot be heard to make demands inconsistent with and contradictory of the fundamental propositions on which the case in their favor must rest. As was said in the similar case of *Mallony v. Horan*, (49 N. Y. 119) : 'When a creditor of the husband pursues him to judgment, and attacks as fraudulent, and sets aside as void, the deed from him, joining in which the wife has released her right of dower, he does not connect himself with the title which that deed has created, and with which the re-

lease of dower is connected. He sets up the title of the husband as it existed before the fraudulent conveyance. and stands in hostility to the title which it was intended to give. That is the attitude of appellants in the present instance. And in reference to a case exactly like the present (*Richardson v. Wyman*, 62 Maine, 280), the Supreme Court of Maine said : The deed to the demandant, upon which the tenant relies to defeat her dower, was fraudulent and void as to creditors ; and he, being a creditor, has avoided it. The deed to demandant, releasing to her the fee, being avoided for fraud, the tenant would set it up as an existing estate to bar the dower to which she would otherwise be entitled. * * * Reduced to its ultimate elements, the proposition is, that a deed fraudulent and void as to the tenant, and which has been avoided by him, may, after such avoidance, be set up as a valid and existing deed, for the purpose of defeating and destroying a right to which the defendant would unquestionably have been entitled had no such deed been executed. When a lesser estate is merged in a greater, the greater estate must be assumed as valid and continuing. There can be no merger when the estates are successive, and not concurrent, nor where the greater estate is void and has been avoided.'—*Richardson v. Wyman*, 62 Maine 280 ; *Ridgeway v. Masting*, 23 Ohio St. 294 ; *McLeery v. McLeery*, 65 Me. 172.''— *Humes v. Scruggs*, 64 Ala. 40, 49–50.

We need add nothing by way of discussion or argument to the foregoing collation of authorities, in justification of our conclusion in line with them. It has been made to appear that every accepted text and every adjudged case, received as authority beyond the territorial limits of the court handing it down, supports without equivocation or reserve the proposition that a fraudulent grantor is entitled as against his creditors to homestead in lands he has attempted to convey in fraud of their rights, when and after the conveyance has been avoided and set aside in an action prosecuted by them ; and the reasons which underlie the doctrine are so fully and clearly set forth in these texts and adjudications, as brought to view in the foregoing pages, that we are under no necessity to recur to them here. We are constrained both by the authorities themselves and—even more—by the considerations upon which they are based, to hold that

when a debtor has conveyed to third persons land including his homestead interest, to hinder, delay and defraud his creditors and such conveyance has been set aside and avoided at the suit of creditors, such debtor then has the same right to assert his homestead exemption against such creditors as he would have had had the conveyance never been executed by him. And this right stands out in bolder relief—its equity, while not more certain is more manifest to even casual consideration—where, as in the case at bar; even under the fraudulent transaction the land was held *for* the debtor and not in hostility to him, where he supplied the money with which the land was purchased and paid for and had the title vested in his children who held it solely for his use and benefit, which is the theory upon which the complainant sought and had relief against it.

A few words in respect of the opinion and conclusion of Mr. Justice Coleman, and we are through with this part of the case : It seems to us that a fundamental and all pervading error of his position results necessarily from the fact, of which we do not think he has taken due account, that the issue here is not between Kennedy and the persons in whom he fraudulently had the title to the land invested at all, but wholly between him and the creditor at whose suit the land was decreed to belong to him and not to his children, and to be subjected as his land to the debt of the complainant. The question is not what rights said grantees have against Kennedy in respect of homestead or anything else. They are asserting no rights. The only right the complainant bank ever had or asserted against them—the avoidance of the title they had—has been fully effectuated against them by the decree of this court ; and the bank is not now asserting any right whatever against them. But the question is, what are the debtor's—Kennedy's—rights in respect of homestead exemption against the bank ; or, perhaps more accurately, what are the rights of the bank against Kennedy in respect of homestead in the land. As we understand it, the opinion of Judge Coleman does not proceed at all on the idea that the complainant has any independent right against Kennedy in respect of the homestead, but only upon the ground, that inasmuch as the latter could not assert homestead against the fraudulent grantees, and for that reason

alone, he cannot claim homestead against the complainant, and this though obviously the only right complainant has against any of the property is derived through the destruction at its suit, of the very claim or right of the grantees which it now relies upon to entitle it to subject the homestead. The conclusion of Judge Coleman puts and sustains the complainant in the attitude of saying to Kennedy in one breath: I claim and have recovered all this land except the homestead interest because the conveyance to your children is utterly void and the land belongs to you; and I claim and am entitled to the homestead interest because the conveynace to your children is entirely valid and the land belongs to them. It seems to us that to allow such a claim would be clearly to draw "confusion and inconsistent deductions," so justly reprobated by Judge Coleman. This quaere is put in the opinion of Judge Coleman: "It being settled by the authorities and upon principle that when a debtor sells and conveys his exempt property, * * *, and thereby has placed it beyond his power to recover it from his grantee, who sets up a claim to it, upon what principle can it be said, that if a creditor gets possession of the property, by a decree of a court or otherwise, that the grantor thereby becomes reinvested with rights and interest superior to his creditor, as well as his grantee?" This presents the whole theory of the case, and shows that the conclusion reached by Judge Coleman is, as we have said, based upon the rights of the grantee against the grantor, which are not involved in this proceeding at all, which the complainant has no concern with whatever, but against which he has prosecuted his action to success, destroying them, and to which, if they are still existent between the grantor and the grantee, the complainant is an utter stranger. This is one answer to the quaere. Another, or perhaps the same one in another form, may be found in the counter quaere: What right has the complainant, who claims solely as a creditor, to appropriate the homestead interest in this land as to which there are and can be no creditors? And the answer in another form is thus given by the Supreme Court of Virginia: "The deed being valid between the parties, no claim or assignment of homestead can affect the rights of the fraudulent grantee. But if he raises no objection, (and he is raising none here) if

[Kennedy v. First National Bank of Tuscaloosa.]

he does not rely upon the estoppel, and the controversy is narrowed to a contention between the debtor and the creditor, I can see nothing to preclude the former as against the latter from asserting his claim of homestead."—*Boynton v. McNeal*, 31 Gratt. 456.

We attach no importance to the fact that this court has held, in one or two cases in which no question of homestead arose or was involved, that a judgment creditor might proceed by bill in equity against a fraudulent grantee of his debtor to subject the land so conveyed without making the debtor a party thereto. Assuming that the homestead right can be affected by a decree against the grantee, this might be well said and be true in a case where, whether the conveyance is avoided or not, no question of homestead would arise— where the land did not embrace a homestead—when it would not be true and would not be said in a case involving, and with reference to a homestead claim. But the homestead right is in no case affected by such decree; it is not involved in such case. To the contrary, it revives and is assertable only after a decree against the grantee avoiding the conveyance; and if, as the host of authorities to which we have referred hold, the right to assert it is not cut off by such decree in a case to which the grantor is a party, surely there is no ground for saying it could be cut off by such decree in a case to which the grantor is not a party.

We do not think the case of *Bolling v. Jones*, 67 Ala., 508, militates against the view we take of this question. That case holds no more than this: that the widow's right of homestead under the statute applied in that case pertained to lands which belonged to the husband at the time of his death. At that time the fraudulent mortgage by the husband to the wife and another had not been avoided or even attacked, but was still subsisting, and efficacious between the parties to a divesture of the husband's title. The land having thus been aliened by the husband, and title not being in him at the crucial moment of time at which the widow's right of home- was determinable, it was held she was not entitled to homestead in the legal estate. There is nothing decided in the case or said in the opinion, as we understand that case, that could be taken to mean that the widow would not have been entitled to homestead, had

the fraudulent mortgage been annulled *before* the husband's death.   If the case means more than this, it is opposed to the doctrine recognized or declared in the three other Alabama cases to which we have referred, as also to  the overwhelming weight of authority in other jurisdictions, and to sound principle.

The case of *Minor v. Wilson*, 58 Fed. Rep., 616, seems to have been decided upon certain statutes of Georgia. If it may be taken as denying the right of homestead because of a fraudulent conveyance having been made, it is only an addition to the very few  cases supporting a doctrine which cannot stand upon authority or elemental principles.

We deem it too well settled and elementary a proposition to be open to discussion, that a party cannot claim both through and against a deed.  Having acquired rights under it, he is estopped to claim rights against it.   That is the principle of estoppel we invoke in this case ; and if Judge Coleman's "fourth proposition" excludes the application of the doctrine of estoppel to such a case, it is, in our opinion, palpably unsound.

Judge Coleman further says :   "My sixth proposition is, that every person who invokes the aid of equity must have  clean  hands."  Nobody has ever questioned the soundness of that proposition, and it is equally well established that a debtor's hands are never soiled by the sale and conveyance of his homestead or homestead interest, and as that is the only interest involved in this case, we are utterly unable to see what application the proposition of the dissenting  opinion about "clean hands" can have here.

So far as the fact that Kennedy had had the title to the land in which he now claims homestead vested in his children in fraud of his creditors is concerned, our conclusion is, that transaction having been avoided, that he is entitled, as against the complainant and his creditors generally, to have homestead, or two thousand dollars in lien of homestead, allotted to him, as prayed in petition.

It is contended, however, that the debtor's claim for exemption came too late—that he ought to have set it up in his answer to the bill, and not having been brought to the attention of the court by answer or plea

and proof, by such neglect he waived and lost his right. It may be admitted, that in a direct proceeding in equity against one who is the owner of lands, to condemn them to sale, in which he has a right of homestead exemption, and who in making answer, sets up no claim to such exemption, and allows them to be condemned to sale for the payment of decree rendered against him, and they are sold thereunder, he will be held to have waived his right to claim, and would not be heard afterwards to complain.—*Clarke v. Spencer*, 75 Ala., 57.

The policy of our law as evidenced by constitutional and statutory provisions for the purpose, is to secure to every resident and family an absolute right of homestead. It cannot be alienated by the husband, in whom the title remains, except in the manner carefully prescribed by statute. The owner may file his declaration of exemption in the probate court, and this protects him against a levy upon it, unless, on a contest of his claim as provided, it is held to be invalid, or if he has not filed his declaration, and the homestead is levied on under legal pocess, he may, at any time, after the levy and prior to the sale. file with the officer making the levy, a claim in writing verified by affidavit in the maner directed by statute, which shall protect his property from sale, unless contested as provided, and his claim has been found to be of no validity.—Code, §§ 2515, 2521; *Wright v. Grabfelder*, 74 Ala., 460. Every supposed necessary precaution, in these and other sections of the Code, has been taken to protect and preserve this family reservation. The courts generally are united in the conclusion, that such statutes, beneficial in their operation, and springing from a wise public policy, should be liberally construed, so as to give effect to legislative intent.—*McGuire v. VanPelt*, 55 Ala., 353; Thompson on Homestead Exemption, §§ 4, 7. Waivers of this right, which is deemed so necessary in our law to be preserved for the benefit of the family relation, are not to be favored and declared, except when deliberately and fairly made. In keeping with this policy, it has been held, that though the statutes make no provision for such a claim or contest in a court of chancery, yet the right being clear and of constitutional guaranty, that court will grant relief in such cases com-

ing before it, according to its own peculiar methods. The right must not be denied on any technical or unsubstantial ground.—*Tonsmere v. Buckland*, 88 Ala., 314.

As has been stated, the object of the bill filed in this case, was to set aside Kennedy's conveyance of his property, including his homestead, made in fraud of his creditors. To this bill Kennedy was made a party, though as contended he was not a necessary party—the correctness of which proposition it is unnecessary to question. Kennedy and his grantees, in their defense, maintained the fairness of the transaction; the chancery court decided in their favor, but on appeal to this court the conveyance was held to be fraudulent, and that decision was, on the 22d of December, 1890, reversed, and a decree here rendered for the sale of the property sought to be sold, for the payment of the judgment of the appellee against Kennedy, if the same was not paid, together with the costs, by the 1st day of February, 1891. On the 10th day of March, 1891, said Kennedy filed in said chancery court, his claim of exemption to his homestead, which he described, or to $2,000 of the proceeds of its sale, if ascertained to be of greater value than that sum. On the 13th of April, the register proceeded to sell the property in obedience to the decree of this court. The residence and lots claimed as exempt, brought, as the register reported, the sum of $8,000. On May 5th, at the spring term of said court, said Kennedy filed another petition in said court, to be allowed the sum of $2,000 out of the proceeds of the sale of his homestead, and on May 8th, the chancellor, by his decree, denied his said claims for exemption, and dismissed his petitions. It thus appears, that the claimant was not lacking in diligence in claiming his homestead rights, after the decision of the case in this court. He made his claim about as soon thereafter as due diligence required.

Suppose Kennedy had not been made a party to this suit,—as it is claimed might, properly, not have been done. In such case, it could scarcely be contended that he could not, after the decision setting aside his conveyance as fraudulent, have filed his claim, as he did, for his exemptions, and that the chancery court could have denied his claim. The reason, if any, why he might not have been made a party is, that as between him and his

grantees, he had conveyed his property and was bound by his deed, and being insolvent, the complainant,—as is contended, for the purposes of the other branch of the case,—might not have made him a party. Yet, it did so, and having assigned him such an attitude in the case, can it be said now, that because he did not file an answer or plea, setting up his claim of exemption in the property sought to be condemned and support it by proof, he has thereby waived his exemptions. It would seem, if he were not a necessary party to complainant's bill, on the ground of having no interest in the litigation, and he was made one, simply, as a proper party, he should not be held to the consequences, sought to be placed upon him, of being a necessary party, having an interest in the litigation, directly proceeded against, which he failed and refused to set up. The truth is, as has been fully shown, until his conveyance was set aside, he had no claim of exemption which he could make in his answer in this case. If he had a homestead right, it could accrue, as we have seen, only and when his conveyance was set aside as fraudulent. Until then, the title to the property was in his fraudulent grantees. How could he, without reference to the question of his being a necessary or proper party to the bill, be expected or required, by any rule of law, in one breath, to assert in his answer the validity of the conveyance of his homestead, and in the other, to deny its validity? After the title of grantees in said fraudulent conveyance was declared null and void, and the property declared to be Kennedy's, and not till then, did he have or own a homestead to which he could make a claim. Some of the adjudications to which we have already referred, are decisive of this question, and none of our own cases which have been cited as opposed to our conclusion, when properly construed, are opposed to it. "Courts of equity, in affording relief against fraud, seek simply to restore the parties, as near as may be, to the positions they would have occupied, had no fraud been perpetrated."—*Sears v. Hanks*, 14 Ohio St. 298 ; *Cox v. Wilder*, 2 Dill. 45, 49 ; *Shipe, Cloud & Co. v. Repass*, 28 Gratt, 716 ; *Marshall v. Sears*, 79 Va. 49 ; *Leupold v. Krause*, 95 Ill. 440.

The former judgmet of affirmance is set aside ; the decree of the court below is reversed, and the cause is re-

manded to the chancery court that relief may be granted in accordance with the foregoing opinion.

Brickell, C. J., and Head, J., not sitting, having been of counsel.

COLEMAN, J., dissenting.—To properly understand the discussion, the facts of the case at bar should be stated. A judgment creditor of John S. Kennedy filed a bill against the debtor and his grantees to set aside a fraudulent conveyance of lands, and to subject the same to the satisfaction of the judgment. The grantor debtor and his grantees answered the bill, each denying the fraud. The grantor denied having or owning any interest in the lands conveyed, and the grantees asserted that that they were *bona fide* owners of the same. There was no suggestion or claim of exemption or homestead interest by the debtor or the grantees in this litigation. The issues were fairly presented, and after final decree of condemnation and order of sale of the land the debtor filed his petition, praying for an allowance of two thousand dollars of the purchase money as a homestead exemption, and his right to it, under the facts of the case is the question for decision. The conclusion of my associate Justices; McCLELLAN and HARALSON, rests upon the broad proposition as stated in their opinion "that when a debtor has conveyed to third persons lands including his homestead interest to hinder, delay and defraud his creditors, and such conveyance has been set aside and avoided at the suit of creditors, such debtor then has the same right to assert his homestead exemption against such creditors as he would have had, had the conveyance never been executed by him." "The homestead right revives and is assertable only after a decree against the grantee avoiding the conveyance." The propositions of law are fairly stated in the foregoing extracts from their opinion, and there can be no misunderstanding of the issue. My position is, first, the propositions are not universally sound; and, second, that the principles cannot be invoked in this case by the debtor. The opinion of my associates states that "the authorities are well nigh uniform in support of the propositions" and in confirmation of the statement a great many are cited. Having a sincere desire to agree with my associates, and to have the question settled upon just princi-

[Kennedy v. First National Bank of Tuscaloosa.]

ples, without overturning others which are indispensable to the administration of justice, I have carefully examined each of the authorities cited, as well as many others, and my conclusion is, but few sustain any of the propositions, and but one the conclusion of my associates in all things. I state briefly the result of my own examination of the cases cited. How far I am correct, the inquirer must examine and verify for himself.

Freeman on Executions, § 138, states the proposition that fraudulent conveyances apply only to property subject to execution—a proposition not controverted.

The case of *DeArman v. DeArman*, 4 Ala. 521, decides that an agreement by a debtor as to the disposition of property, not liable for his debts, is not fraudulent as to his creditors. It decides nothing more.

The case of *Vaughan v. Thompson*, 17 Ill. 78, holds that a sale or mortgage of property, exempt from levy, is not a fraud on the creditors of the vendor or mortgagor, and if levied upon the owner might maintain trespass. This case further holds that in an action for trespass by the debtor the defendant could show in defense of the action a fraudulent sale of the property. The first proposition does not support the contention, while the latter is in conflict with it.

In the case of *Muller v. Inderreiden*, 79 Ill. 382, the conveyance was by the husband to the wife. The court decreed that they (husband and wife) were entitled to the homestead, but in this case the claim of exemption was set up, before final decree. It will be observed also in this case, that the grantee, the wife, claimed the homestead, a very important fact as will be seen in the further discussion of the question.

The case of *Lishy v. Perry*, 6 Bush (Ky.) 515, decides no more than that a sale of an exempt homestead is not a fraud on creditors, a proposition no one denies or doubts. The case of *Knevan v. Specker*, 11 Bush (Ky.) 1, was where the husband and wife conveyed to the son, and the son reconveyed to the wife. The wife claimed the exempt property under her conveyance. This authority directly supports my position, as will be seen hereafter.

The case of *White v. Givens*, 29 La. 571, merely decides, that where a debtor has fraudulently disposed of property which was liable to execution, that fact will

not render his homestead, which is exempt, liable. In the case of the *Succession of Cottingham*, *Ib*. 669, the facts do not appear in the statement of the case, or in the opinion of the court, and a satisfactory understanding of the case cannot be had from a reading of the opinion. It does appear, however, that the claim of the widow was superior and prior to that of a mortgagee, and consequently to that of an attaching creditor. Some stress seems to be given to the fact that it was occupied as a homestead at the time of the death of the husband.

The case of *Legro v. Lord*, 10 Me. 161, has no application. It simply decides that the transfer of a personal privilege which is not leviable, cannot be fraudulent.

The case of *Castle v. Palmer*, 6 Allen (Mass.) 401, only decides that a conveyance of a homestead in which the wife does not join does not render it liable as a fraudulent conveyance. The conveyance was by the husband to the wife. She claimed and held it against the creditors of the husband. This she was entitled to do under every principle of law.

In the case of *Vogler v. Montgomery*, 54 Mo. 577, it appears that after judgment against him, Vogler conveyed the land to one Suess, who reconveyed to Vogler. The only question was whether the conveyance to Suess in law was an abandonment of the homestead. The facts, however, showed that Vogler had never surrendered possession or ceased to occupy it as a homestead. The title was reconveyed to him. There can be no doubt of his right to the homestead.

The case of *The Bank v. Henderson*, 4 Humph. 75, is not in point. No question of exemption arose in the case, and the grantor was not a party to the proceedings. The question arose on a contest between the creditors of a grantor and his grantee as to whether an equitable interest passed by the conveyance.

The case of *Wood v. Chambers*, 20 Texas 247, decides no more than a conveyance of the homestead is not a fraud on the creditors. The case of *Cox v. Shropshire*, 25 Texas 113, cannot be said to be an authority in point. The grantor was not a party to the cause. The question between the creditor and the grantee, was whether the homestead of the debtor had been conveyed in good faith. If so, the grantee was entitled to hold it against the creditor. On the other hand, if he held the prop-

erty for the grantor in fraud and collusion with him and there had been an abandonment by him, then the property was liable.

The case of *Foster v. McGregor*, 11 Vt. 595, decides no more than that a sale of property, which is exempt from levy, is not a fraud on creditors. *Danforth v. Beattie*, 43 Vt. 138, is not in point. The grantor was not a party and made no claim. The case decides that a mortgage of the homestead is not a fraud on a creditor, and that a purchaser at the foreclosure sale, acquired a valid title against the creditor of the mortgagor.

The four cases cited from Wisconsin, *Bond v. Seymour*, 1 Chandler 40; *Dreutzer v. Bell*, 11 Wis. 114; *Pike v. Miles*, 23 Wis. 164, and *Murphy v. Crouch*, 24 Wis. 365, only decide the general principle that a conveyance of the homestead is not a fraud on creditors. In the two latter cases, the conveyance was to the wife.

In the case of *McFarland v. Goodman*, 6 Bissell, 111 (U. S. Cir. Ct.) the court declared that the grantor of the homestead reserved from the grant the right to retain possession and use of the homestead, and that under the agreement the grantor could enforce this right against the grantee in a court of equity. In the opinion the court affirmed the doctrine declared in *Cox v. Wilder*, 2 Dillon, which will be referred to hereafter. But the principle laid down in the case of *Cox v. Wilder* was not at all necessary to a decision of the case in Bissell, *supra*.

In Smythe on Exemptions and Homestead, § 555, the text does not support the proposition. The only principle stated is the general one, that a debtor may dispose of his exempt property and it will not be a fraud on his creditors. In the notes to sections 554, 555 of Smythe on Homestead and Exemptions, it is said that New York, Pennsylvania and Indiana hold contrary to the rule contended for by my associates, and to which list my associates add 18 Ill. 511, 54 N. H. 475, 29 Penn. St. 219, to which might be added 8 Lea (Tenn.) 389 and others, including, I think, Alabama.

In *Bean v. Smith*, 2 Mason 252, opinion by Story, Judge, as far as applicable, is an authority against the proposition in support of which it was cited. It holds that a fraudulent conveyance is good against the grantor. That *bona fide* creditors of the grantee, without notice,

acquire a superior right to property fraudulently conveyed to him, over the creditors of the fraudulent grantor. It further holds that a subsequent conveyance by the fraudulent debtor carries nothing.

It will be seen that a vast array of the authorities either have no application, or else do not support the proposition. "The host of authorities" referred to, to quote from the opinion of my associates, which do not sustain them, to those which do sustain them, are in about the same proportion as were Falstaff's "sixteen men in buckram suits," to the real number present. I have not examined the decisions of all the states, but as far as investigated I find as many which lay down a different rule from that which I am combatting. Our duty is to ascertain which line of decisions rest upon the soundest principles of law. The cases from Grattan, Virginia, so largely quoted from, were decided by a divided court, of three to two, and my opinion is, the dissenting opinion of Judge Christian in 31 Grattan, 459, was not answered. The argument upon which these decisions rest are, as I understand, the opinion of the court in the case at bar, and as I understand from the opinions themselves, as follows :

"That a fraudulent conveyance of the homestead does not constitute an abandonment of the homestead, and does not estop the grantor or his wife from claiming it as such."

"That the homestead privilege is created for the benefit of the wife and children, as well as for the husband and father, and therefore the former should not be prejudiced by the wrongful act of the latter."

"That the conveyance not being void as to creditors, it stands as to them as though it had never been made."

"That creditors can only enforce rights they could have enforced, if no such conveyance had been made."

"That as to the homestead it is a matter between the grantor and grantee in which the creditor has no concern."

These are the reasons deduced by Mr. Thompson on Homesteads, §§ 405, 408, 412, and Mr. Waples, pp. 531, 534, as stated in the opinion. The first two propositions hardly arise in the present case, although I am of opinion they were of controlling influence in the Mississippi cases cited by my associates, and perhaps

others. It is conceded in the present case, that the debtor grantor could not claim the homestead against his grantees. In addition to these, the Virginia and North Carolina decisions say "that the controversy is between the creditors on the one hand, and the debtor and fraudulent alienee on the other." "If the debtor has a valid claim to the homestead against the creditor, before the execution of the deed, how is the condition of the creditor improved?" "The validity of the fraudulent conveyance between the parties, is no concern of the creditors." That by having the fraudulent conveyance annulled, the title is restored to the defendant debtor, and he can claim it." 'That the doctrine of estoppel applies, and the creditor, after having the conveyance annulled, is estopped from denying the right of the debtor to his homestead." The grounds which I have stated have been enlarged in some of the decisions, but an analysis of the authorities and the opinion of my associates, it is believed will show that I have fully and fairly stated them all. I might premise by stating, that with the single exception of the case of *Sears v. Hanks*, 14 Ohio St., 298, the proceedings in the cases cited by my associates were by a creditor against the fradulent debtor and his grantee, and that the defense was set up by plea or answer, and sustained by proof, that the grantor had never surrendered possession, nor had he ceased to actually occupy and claim the homestead, and the principles stated were applied to this condition of the pleadings and proof. In these cases neither the grantor debtor nor his grantee denied or controverted the occupation and claim of the debtor. These cases presented both in the pleadings and proof, a far different state of affairs from the case at bar, and but remotely, if at all, support the conclusion of the court in the case before us. In the case at bar neither the debtor nor his grantees, by plea or answer, or suggestion of any kind as a defense to the creditor's bill, claimed a homestead interest or other exemption in the property conveyed. On the contrary both denied that the grantor debtor owned any interest in the property. Furthermore there is neither wife nor children interested in this claim, and the doctrine upon which several of the authorities rest, "that the wife and children for whom the homestead interest was created, should not be

prejudiced by the wrongful act of the father and hus-
band," has no force. In *Cox v. Wilder, supra*, Judge
Dillon intimates that if only the fraudulent debtor was
interested (which is the case at bar), a different rule
might apply.

But are the reasons given sound, and are they consist-
ent with the settled decisions of this court, and el-
ementary principles recognized by almost every court?
I contend that the following propositions of law are
sound and well established, and that any rule which
conflicts with their application, cannot be upheld:
First, that a fraudulent conveyance is binding and
valid between the parties to it, and that as to exempt
property the grantee acquires a perfect title against the
grantor and his creditors. Second, that in a proceeding
by a judgment creditor to subject property which has
been fraudulently conveyed, by a conveyance valid be-
tween the debtor and his grantee, the contest is not be-
tween the creditor on the one hand, and his debtor and
his grantee on the other, but that the contest is between
the creditor and the fraudulent grantee, and if the
grantee fails to make a defense which he could or ought
to have made, he is concluded by the decree against
him. Third, that the annulment of a fraudulent con-
veyance, at the suit of a creditor, does not restore the
debtor to any right, which he would not have had with-
out such annulment. That the claim of exemption is
not revived and assertable by the grantor on the cancel-
lation of the fraudulent conveyance. Fourth, that the
doctrine of estoppel can have no operation in a contest
of this character. Fifth, that no person without an in-
terest in the property, can defeat an execution or the
enforcement of a decree, by showing that the property
is not liable to the process or decree. Sixth, that every
person who invokes the aid of a court of equity must
have clean hands. Seventh, that a person entitled to a
homestead or other exemption in a proceeding *in rem*,
must interpose his claim before final decree of · condem-
nation, or he will be held to have waived it.

In order to sustain the conclusion reached by my as-
sociates, that John S. Kennedy is entitled to two thous-
and dollars of the purchase money exempted to him,
each and all of the propositions which I have an-
nounced as correct law, it appears to me, must be over-

turned. I deem it unnecessary to cite a vast "host" of authorities in support of each proposition, but will content myself with a few, which are unquestioned.

First, that a fraudulent conveyance is valid and binding, between the parties, and that there is no difference in this respect, between a conveyance direct, and when the title is fraudulently taken in the name of a third person, I cite the following cases : 2 Brick. Dig., p. 16, §§ 45, 46 ; *Greenwood v. Coleman*, 34 Ala. 153 ; *Wiley Banks & Co. v. Knight*, 27 Ala. 336; *Walton, Admr. v. Bonham*, 24 Ala. 514 ; *Marler v. Marler*, 6 Ala. 369 ; *Kelley v. Karsner*, 72 Ala. 106 ; *King v. King*, 61 Ala. 479; 3 Wait Act. & Def., 199.

That the grantee of exempt property acquires a good title against the grantor and his creditors, I cite the following : *Wright v. Smith*, 66 Ala. 516 ; *Lehman, Durr & Co. v. Bryan*, 67 Ala. 558 ; *Alley v. Daniel*, 75 Ala. 406 ; *Clark v. Spencer*, 75 Ala. 56; 3 Brick. Dig., pp. 491, 515, 516 ; *Smith v. Kehr*, 2 Dillon 50. These authorities fully sustain the first proposition.

My second proposition is, that the debtor has no interest in a proceeding, by a *judgment* creditor, to reach property which has been fraudulently conveyed by the debtor, and which is claimed by the grantee, and especially is this true where the grantor disclaimed owning any interest in the same. It would seem that neither argument nor authority is necessary to sustain this proposition, but it has been adjudicated by this court, and the Supreme Court of the United States. In the case of *Coffey v. Norwood*, 81 Ala. 512, it is held that "where the fraudulent debtor has conveyed to the grantee or donee his entire interest, legal and equitable, in the property sought to be subjected, the conveyance is binding on him his heirs and personal representatives, *and is absolutely unassailable by him* or them." I italicise. The opinion proceeds as follows : "The debtor has no interest, legal or beneficial, either in the property sought to be subjected or in the litigation having reference to it except remotely and incidentally." "The fraudulent donee can make any defense that the debtor could have made ;" and the decision expressly declares that the debtor is not a necessary party. It was expressly so decided again in the case of *Staton v. Rising*, 103 Ala. 454. In the case of *Buffington v. Harney*, 95 U. S. 103

it was expressly decided, that a fraudulent grantor is not a necessary party to a bill filed to reach assets claimed by a fraudulent grantee. This opinion further holds, that the conveyance is set aside, not absolutely, but *only* as to creditors. This is an important limitation of the effect of the decree, and is necessarily correct if the conveyance be valid between the fraudulent debtor and his grantee. To the same effect many authorities might be cited. See the following: Wait on Fraudulent Conveyances, § 129; *Taylor v. Webb*, 54 Miss. 36; *Campbell v. Jones*, 25 Minn. 155; *Potter v Phillips*, 44 Iowa 357.

We will consider the third and fifth propositions together, as they involve principles which in some respects bear upon each other. My third proposition is, that the cancellation of a fraudulent conveyance at the suit of a creditor does not restore to the debtor any right or interest in the property which he had parted with by his conveyance; and the fifth is, that no person not owning an interest in the property can defeat an execution or decree of a court subjecting it to the payment of the debt due his creditor. Is it necessary to cite authority or furnish argument to show, that when property fraudulently conveyed is sold to satisfy a judgment against the grantor, that the excess if any is paid to the grantee, and not to the grantor? That if a sheriff makes an unwarranted levy upon more property, which has been fraudulently conveyed, than is necessary, he is liable in trespass at the suit of the grantee and not of the fraudulent grantor? That in the case at bar where the property was claimed by the grantees or donees, and admitted to be theirs by the grantor, that if the proceeds of the sale exceed the judgment and cost, the excess must be paid to the grantees, and nothing can prevent their recovery of it from the officer making the sale? Where does the register, by virtue of such a decree get authority to sell any more property, than just sufficient to pay the judgment or decree? Does the remainder not sold, by virtue of the decree declaring the conveyance fraudulent, pass back and reinvest in the debtor grantor, or does it remain in the grantee under the deed of conveyance? Suppose in the case at bar the grantee had pleaded in defense that a part of the property was exempt from levy, and sustained it by proof,

would not the decree of the court have been framed, so as to have preserved to the grantee, not the grantor, the exemption? These conclusions follow necessarily from the rule clearly established, that as between the parties, the debtor grantor and his grantee or donee, the conveyance is valid, that as to exempt property, the grantee or donee acquires a perfect title against the creditors of the grantor or donor, and that the grantor is not a necessary party to a suit by a creditor against a fraudulent grantee. When a party to a conveyance seeks the aid of a court to rescind it, whether because of fraud or otherwise, and it is done, the purpose and effect is to put the parties *in statu quo*, as far as can be done. A very different principle applies when a third party applies to set aside a conveyance, which is valid between the parties, but not binding on him because of the fraud of the parties to it. In such a case, the law does not interpose to relieve the parties to the conveyance. They are left *in delicto*, but the court subjects the property in the hands of the grantee to the injured creditor. The grantee holds it subject to the prior right of the creditor. The limitation on the extent and effect of a decree annulling a fraudulent conveyance, as stated in the case of *Buffington v. Harney*, 95 U. S., *supra*, is absolutely correct, that the conveyance is set aside *only* as to the creditor. It is upon this principle that the decisions of this court award the excess to the grantee and not to the grantor. As to the grantor, the conveyance is "unassailable."

My fifth proposition is even more impregnable. Bear in mind that the judgment creditor has a decree in force, ascertaining specifically that the property is liable and subjecting it to the satisfaction of the judgment against the debtor, who was a party to the creditor's bill, and who, after final decree condemning the land, for the first time makes known or sets up by original petition a claim of two thousand dollars of the purchase money as a homestead exemption. Under the pleadings and proof in the case, if there was a wrong done any one by the decree, it was a wrong to the grantees, who as between the grantor and themselves were the owners of the property. What right has the grantor debtor to come in and redress the wrong done to his grantee? If the grantee had defended on the grounds that the property was ex-

14

empt, and, therefore, the conveyance to him was not fraudulent, and the lower court had erroneously ruled against his claim, the grantee alone could appeal and assign as error the ruling of the court. The grantor debtor would not be heard. What right has the debtor who has parted with all interest in the property to redress the wrong of his grantee?—*Seisel v. Folmar*, 103 Ala. 491 ; *Dent v. Smith*, 15 Ala. 286.

It being settled by authority and upon principle that when a debtor sells and conveys his exempt property, by a conveyance valid against him, and thereby has placed it beyond his power, to recover it from his grantee, who sets up a claim to it, upon what principle can it be said, that if a creditor gets possession of the property, by a decree of a court against his grantee or otherwise, that the grantor thereby becomes reinvested with rights, and interest, superior to his creditor, as well as his grantee? My associates contend that the decree of the court against the grantee condemning the land, which, so far as the grantor is concerned, belongs to the grantee absolutely and unassailably, restores to the grantor an assertable right, which, without the decree he would not have had. I must confess my inability to appreciate the argument. If the argument is sound, it will stand the test of hypothetical cases which may arise. Suppose an insolvent debtor, to defraud his creditors, sells property, which includes his exempt property, to a purchaser, participating in the fraud, for cash at a fair value, which is paid to the debtor. A judgment creditor of the vendor, files a bill against the fraudulent vendee alone, to subject the property to his judgment. Under his purchase and deed of conveyance the vendee can make any defense the vendor could make. If, instead of setting up the defense that a portion of the purchased property included the exempt property of his vendor, the vendee, bent on holding all the property, defends solely on the ground, that his purchase was *bona fide*, and upon this issue the case is determined against him, the conveyance declared void and fraudulent as to creditors, (not as to the vendor) and the entire property decreed to be sold. According to the proposition of my associates, the decree of the court restores to the fraudulent debtor his former rights, his exemption "revives and is assertable," upon the grounds, that as to the ex-

[Kennedy v. First National Bank of Tuscaloosa.]

empt property, it was not fraudulent, that the creditor, without the fraudulent conveyance, had no right to it, and by the conveyance the creditor's interest could not be improved. If this argument be sound, had Kennedy died after the rendition of the decree, his administrator or distributee, would be entitled to claim and recover the purchase money. My associates utterly ignore the indispensable rule in all judicial proceedings, that a plaintiff or petitioner who applies to a court for relief, must show, not that his adversary has no right to the property, but that he, the petitioner, has an interest about to be injured. In the supposed case, if the doctrine contended for prevails, fraud would be doubly rewarded; first, in receiving the purchase money from his vendee, and, secondly, in receiving it again from the proceeds of the sale under the decree of the court. Such results cannot proceed from a sound rule. The fact that a creditor may have no right to subject property to his debt, certainly does not authorize another, who has no interest in the property, to claim it, in a court of law or equity.

It is said in the opinion of my associates, that I misapprehend the fact, that the issue here is between the debtor and the creditor, and that the grantee is not present claiming anything, and that the creditor has obtained a decree condemning property, which is clearly not liable. I have tried to make it clear, that the debtor has no right to raise this question, that he has parted with all interest in the property, by a conveyance confessed to be binding on him, and that the decree of the court declared the conveyance void "*only*" as to the creditor, not as to the debtor. As to him the conveyance remains as it was before. As to the statement that the grantees are not present claiming anything, my reply is, they have no right to be heard. They have had their day in court, and by final decree, they lost upon the issue tried. They cannot re-try the case and "vex" the complainant on another issue, which, if it existed, should have been presented. And the same rule applies to the debtor. He was also a party and is equally concluded by the decree as the grantees. My associates have failed to show why it is, that the grantee is concluded by the final decree, and the grantor is not, who was also a party to the suit. But this question comes under another head of the discussion.

Sound principles of law cannot conflict with each other. Confusion and inconsistent deductions sometimes arise, by confounding questions, apparently similar, which are clearly distinguishable and controlled by different principles. When one person's money is used in the purchase of land, and the title taken in another, no fraud being intended, the law raises a trust in favor of the owner of the money. In equity the property is regarded as the property of him who furnished the money, and a court of equity will decree him a title or subject it to the payment of his debts. There can be no doubt that the equitable owner may claim it as exempt, and that it is the subject of a homestead interest. So if a grantee overreaches a grantor, and obtains a conveyance of lands from him including the homestead under such circumstances, that the grantor could enforce a rescission of the contract, I am of opinion, that an exemption could be claimed in such property. My proposition is, and I think it solves the whole controversy, that when a debtor has a right in or to property which he may enforce in a court of law or equity, or which will enable him to defend successfully against his grantee or adverse claimant, he has such an interest that it is subject to the claim of exemption; but when he has made such a disposition of property by his own act, whether with a good or vicious intent, as that he could not enforce any right or claim against his grantee, or other adverse claimant, which is admitted to be the case here, then it is not the subject of exemption, and his condition cannot be bettered by a decree of a court, rightfully or wrongfully subjecting it to the payment of his debts. It is a question in which he is not interested under such conditions. If, in the case at bar, John S. Kennedy, the petitioner, by way of answer or cross bill to the creditor's bill, had set up such a state of facts as to show that he had an interest in the property, which the court should protect and decree to him whether against his creditor or grantee, upon proper proof the court ought to have granted him protection and relief, and this court would have so decreed. But when the petitioner denied having interest in the property, and he and his grantees asserted that it belonged to his grantees, and the grantees claimed it both against him and his creditor, and the court found, that John S. Kennedy had

fraudulently conveyed this property, to defraud the judgment creditor, both the pleadings and the evidence showed conclusively that John S. Kennedy had made such a disposition of the property, that he had no right or interest in the same, which he could enforce or defend, and, consequently, he cannot be heard on this account as well as for the reason that he is concluded by that decree from setting up such a claim after its rendition. The opinion of my associates expressly declares: *"Until the conveyance was set aside, he had no claim of exemption which he could make. * * * Until then the title to the property was in the fraudulent grantees."* I have italicised the statement, because it emphasises and concedes as true, one of the premises of my argument.

I have discussed these questions at some length, because as to them my position is squarely against that of my associates, as applicable to the case before us. In the case of *Cox v. Wilder*, 2 Dillon, in the Virginia cases, and in the Mississippi cases cited, the claim of exemption was brought forward by answer or cross-bill to the original bill, and not after final decree, as here, and my reading of those cases has led me to the conclusion that the courts in those cases would have held, on account of the construction of the homestead laws in each of those states, and the facts proven in the cases, the interest of the wife and children in the homestead, the fact that the husband never ceased to occupy and claim the homestead as such, that the conveyance of the homestead was not valid and binding on the grantor in favor of their respective grantees, but that the grantor could have successfully resisted the claim of the grantee. Put upon these grounds, and those cases are entirely in harmony with me. I do not read these decisions as my associates do, as holding that an absolute conveyance which is binding on the grantor, of property in which no one had an interest except the grantor, in which no interest is reserved, and against which he could not claim an interest or defend, is not in law, an abandonment of the homestead. This is the doctrine of my associates, and it drives them to the doctrine of "revivor" and "restoration" of a right which confessedly did not and could not exist without the decree of cancellation. In other words the decree which condemns the property to the satisfaction of the judgment,

thereby exempts it from liability, and puts it beyond the reach of the decree. The decree defeats itself. If these decisions are placed upon the grounds occupied by my associates, then I hold, for the reasons stated, that they are unsound. Many of the authorities cited were the cases where the conveyance was made by the husband to the wife, and the claim was allowed to the wife. The conveyance being good between the parties, and the property conveyed being exempt, of course the claim of the wife, under the conveyance, was valid. No one controverts the proposition.

. My fourth proposition is that the doctrine of estoppel has no operation in a contest of this kind. An estoppel arises when one person has been induced to act, or prevented from acting, or has been induced to change his position, by reason of something said or done, or conduct by the person, or proceeding from him, against whom it is invoked. This statement is broad enough to cover every phase of an estoppel. The debtor in the present case does not come within either of the conditions.

My sixth proposition is, that every person who invokes the aid of a court of equity must have clean hands. In this case we have the petitioner stating to the court in substance as follows: I was in debt. I sold and conveyed my property in such a way that I had no further interest in it, and would not and could not have reclaimed it, and I did this for the purpose of defrauding my creditors, and in the litigation I have aided my grantees to make the fraud successful, but my creditors have succeeded in exposing my fraud, and have obtained a decree subjecting the property to the payment of my debts. No wife or children are interested. I ask, therefore, the court to give the property back to me. That is petitioners case, and I leave this proposition without further comment.

Some Alabama decisions have been cited by my associates, as supporting their contention; and I will consider them before concluding my seventh and last proposition. The first of these is *Smith's Executor v. Cockrell*, 66 Ala., 64. Courts are not bound by all that may be said by way of argument and illustration in an opinion, but only by the conclusion of law upon the facts of the case raised by the record. The facts of the case of *Smith v. Cockrell*, *supra*, show that one Robert Johnson,

to defraud his creditors, had the title to certain lands, which he paid for, placed in his wife. Johnson died. Complainant, a creditor of Johnson, filed his bill and sought to subject the land to the payment of his claim. The wife claimed the lands under the conveyance to her, and also claimed the homestead exemption of her deceased husband in the land. The whole question we have been considering was disposed of in a brief paragraph on page 76, as follows: "It is objected that the title of this land being in Mrs. Johnson, no homestead exemption can be claimed in it for the family. This fact would not preclude the claim if it be otherwise allowable. In such cases equity treats the conveyance as having been made to the husband, and protects the family in any lawful claim of exemption." The pleadings and facts present the case of *Smith v. Cockrell* in a rather singular condition. Mrs. Johnson, the grantee, claimed a homestead exemption of the value of $1,700 in her husband's estate, and had commissioners appointed by the probate court, and the homestead to this extent set apart to her and her children, This proceeding on her part was at variance with the right claimed under the deed of conveyance to her, and may have been regarded by the court as a waiver of any claim under the deed, and a recognition by her that she held the title in trust for Robert Johnson, and not against him. This view would justify the statement "that in such cases equity treats the conveyance as having been made to the husband." An equitable interest in land which may be enforced by the owner, is a proper subject for a homestead claim by him, and in equity will be regarded as his property. The widow and minor child may assert a homestead claim to any property, which would have been available to the husband for such a purpose, but to no other. The claim of exemption was made by the fraudulent grantee, Mrs. Johnson, and not by her grantor, as in the case at bar, and under the rules we have laid down the conveyance of exempt property being valid between the parties, the grantee was clearly entitled to it. The conclusion of the court was right in that case, whether the reason assigned was the correct one or not.

The next case cited from the reports of this State and relied upon is that of *Fellows v. Lewis*, 65 Ala., 343. A

reference to the facts and opinion shows that one Grey conveyed his lands including his homestead to Mrs. Lewis. The conveyance was attacked as fraudulent by complainant Fellows, a creditor of Grey. Mrs. Lewis, *the grantee*, claimed the homestead interest. Although it was held that the conveyance was fraudulent, the principle was distinctly declared that the conveyance of the homestead was not a fraud on the creditor, and that Mrs. Lewis was entitled under her deed of conveyance to whatever interest was exempt from legal process. It appeared in this case that Grey left no widow or minor child, and the court held that after the death of Grey, the exemption ceased, and the property was subject to his debts. This was all that the court was required to decide so far as the question before us is concerned, and the conclusion is in exact accord with that held by us; that is, that the conveyance of the homestead is valid between the parties, and the grantee acquires a title superior to the creditor of the grantor. There were some propositions stated in the opinion not raised by the record, and which are not binding as a precedent.

The next case cited is that of *Humes v. Scruggs*, 64 Ala., 40. In this case Mrs. Scruggs claimed dower in certain lands which her husband fraudulently conveyed to her, and which conveyance had been set aside at the instance of a creditor of her husband. The question was as to the effect of the cancellation of the husband's deed upon the dower interest in the land. It was insisted that the dower became merged in the greater estate conveyed to her by her husband, and that upon the annulment of that deed, the dower interest was annulled also. This contention was held to be unsound. The dower interest was not created or vested in the wife by her husband's deed. It existed independent of it. The cancellation of the deed of the husband set aside only that which was conveyed by the deed. The effect of the decree did not reach further than the deed itself. When the deed of the husband was removed or annulled, the dower remained in the wife, as it was independent of the deed. The case is not in point, and but for certain *dicta* in the opinion, I presume the case would not have been cited.

The long quotation from the case of *Richardson v. Wyman*, 62 Me., 280, simply shows that dower was not

merged by the deed of the husband to the wife, the court saying, "there can be no merger where the estates are successive, not concurrent, nor where the greater estate is void and has been avoided;" the gist of the opinion being that the avoidance of the deed did not divest or destroy the dower.

I think my associates dispose of the case of *Bolling v. Jones*, 67 Ala. 508, in rather a summary manner. In their comments on *Bolling v. Jones*, they seem to overlook the fact that in *Smith v. Cockrell*, 66 Ala., *supra*, the conveyance was not set aside until after the death of the husband, just as was done in the case of *Bolling v. Jones*. It is clear from an examination of the two cases, as well as many to which reference has already been made, that Mrs. Johnson was entitled to the homestead under her deed of conveyance, and we have no doubt that if Jones, the husband, had conveyed to his wife, she would have held the homestead against his creditors. The cases of *Bolling v. Jones* and *Smith v. Cockrell*, cannot be reconciled upon the theory of my associates, but are not inconsistent, when put upon the grounds for which I contend. In the case of *Bolling v. Jones*, the very question under consideration was involved and necessarily decided as to the right of the widow, to claim a homestead exemption in lands, which had been fraudulently mortgaged by her husband in his lifetime. The court, Brickell, C. J., delivering the opinion, laid down the rule, "that a homestead was not given to the widow in lands, the husband had alienated in his life, but only in lands of which he died seized and possessed, *having an estate therein of which his personal representative, under an order or decree of the probate court*, could make sale for the payment of debts." "The mortgage," says the court, "though void at the instance of pre-existing creditors, is valid as between the parties, their heirs, personal representatives, and privies in estate. There remained in the mortgagor at the time of his death no more than the equity of redemption in the premises. * * * The equity of redemption was also an estate in which the widow could claim a homestead exemption." The mortgage was set aside at the suit of a creditor as fraudulent, and the land condemned to be sold. The widow claimed $500 of the proceeds of this sale as her homestead exemption. The court held she was not en-

titled to it, for the reason stated, but held she was entitled to a homestead claim out of the equity of redemption which had been previously sold by the administrator, and this upon the grounds, that the probate court had jurisdiction to order the sale of the equity of redemption for the payment of debts; in other words that the equity of redemption was an estate in the husband at the time of his death, but that the land which he had fraudulently aliened was not. The case presents a clear decision squarely upon the point, and is conclusive against the doctrine, that the cancellation of the fraudulent conveyance, restored the grantor to his former rights. Judge Stone rendered a dissenting opinion upon the point, and cited the case of *Fellows v. Lewis*, 65 Ala. 343, which we have considered. The case of *Bolling v. Jones* is irreconcilable with the conclusion of the court, and the principles upon which it rests in the case at bar. This is clearly shown by the facts of the case and the decision and was certainly so understood by Judge Stone. If the cancellation of the mortgage as fraudulent had the effect to restore the mortgagor to his homestead exemption, it would seem that the widow would succeed to this right.

In the case of *Minor v. Wilson*, 58 Federal Reporter, 616, the precise question arose, and it was there held, (Pardee, J., delivering the opinion) "that a decree declaring a deed made by an insolvent debtor and his wife void as against a judgment creditor, does not revest title in the grantor, so as to enable him, or his family to establish a homestead therein to the prejudice of the creditor's claim." Although the opinion refers to the statute of Georgia, the reasoning and principle declared by the court, in reaching the conclusion are precisely those held in the former opinion rendered by this court in this case and in this opinion. I do not think it improper to state here a fact known to all who were members of the court at the time, that the late Chief Justice Stone, who delivered the opinion in the case of *Fellows v. Lewis*, *supra*, and quoted at length by my associates as expressive of his views, and also the dissenting opinion in *Bolling v. Jones*, *supra*, in the case now before us, fully concurred in the views and conclusions expressed in the opinion delivered in this case which declared, for the reasons stated, that the petitioner was

not entitled to a homestead exemption. We may not know what his conclusion would be on the application for a rehearing, but his latest expression coincided with the writer.

My seventh and last proposition is, conceding that John S. Kennedy, or his grantees, might at one time have interposed a claim of exemption, by neglecting or refusing to do so, until final decree of condemnation, the right to do so was waived and forever lost. On this proposition I will state the position of my associates in their own language. Say they: "It may be admitted that in a direct proceeding in equity against one who is the owner of lands, to condemn them to sale, in which he has a right of homestead exemption, and who in making answer sets up no claim to such exemption, and allows them to be condemned to sale for the payment of the decree rendered against him, *and they are sold thereunder*, he will be held to have waived his right to claim, and would not be heard afterwards to complain." I have italicised the words "and they are sold thereunder," for that phrase marks the difference between us. Strike out the words, "and they are sold thereunder," and it leaves the proposition as I contend to be the correct and sound one, and precisely applicable to the case of John S. Kennedy. He was a party defendant, in a direct proceeding in a court of equity to condemn the lands, and he set up no claim to exemption, and allowed the lands to be condemned for the payment of the decree. The issue between us is whether in such a proceeding, he must make his claim, before or after final decree. I have come across but one decision in all my investigation which, in my opinion, bears out my associates on this point, and that is the case in 14 Ohio State, 298, *supra*. On this proposition my associates repudiate Mr. Thompson on Homestead, on whom they so much rely upon in the other. He says in sections 715, 716, 720, "So long as the judgment remains in force, it is in itself evidence of the right of the plaintiff to the thing adjudged, and gives him a right to process to execute the judgment. It is not necessary to the conclusiveness of the former judgment that issue should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient if that point was essential to the former judgment. *There is nothing*

*in the nature of the homestead right to exempt it from the operation of this general principle.*" "The purchaser brought, to recover possession, an action of *trespass to try title.* The defendants, A and B, pleaded that the land was, at the time of the execution of the deed which had been declared a mortgage, the separate property and homestead of B. This defense was held bad on demurrer, the court saying: "The judgment which the answer proposed to impeach, conclusively settled that the lot upon which it adjudicated a foreclosure of the mortgage was not within the homestead exemption at the time of its rendition. That question, therefore, it was not competent for the defendant to bring again into litigation in this action, unless it had been proposed to impeach that judgment on the ground of fraud, which is not averred or pretended in respect to the judgment." "This," says the Illinois court, "is the extent to which the exception has been carried; and, when a person not under disability is sued, and the homestead is involved, it will be affected by any neglect to assert it, precisely as any other right." See, also, section 726.

In *Cassell v. Williams*, 12 Ill. 399, it is said: "If a party fraudulently transfer his property for the purpose of avoiding the payment of his debts, or even sell it for a valuable consideration, after it has become subject to the lien of an execution against him, he cannot afterwards claim the property as his, and recover from the officer selling it, three times its value, upon the ground that it was exempt from execution against him."

In Wait on Fraudulent Conveyances, section 129, it is said: "The debtor could not gain or lose, whichever way it might be decided." In *Potter v. Phillips*, the court said that though the debtor was a proper party, it did not see why he was to be regarded as a necessary party; whether the conveyances were fraudulent or in good faith the property irrevocably passed beyond his control. He could be prejudiced in no way, in a legal sense, by a determination which subjected the property to the payment of his debts. So it was decided in Minnesota, that where a creditor sold land which the debtor had fraudulently alienated, the fraudulent grantee might bring an action against the purchaser to determine his title without bringing in the fraudulent grantor. It is remarked in some of the cases that the frau-

dulent grantor should be joined because it is his conduct that is to be investigated. The Supreme Court of Mississippi, however, observe that the object of the proceeding is to reach property, not character. In truth the proceeding is *in rem*, and while the complainant may, if he chooses so to do, join as defendants all who are connected with the property, or the transactions to be investigated, he is only compelled to join those in whom the legal title vests, or those who have a beneficial interest to be affected. Cases are cited in consonance with this reasoning." See *Taylor v. Webb*, 54 Miss. 36.

In the case of *McFarland v. Goodman*, 6 Bissell 111, one of the cases relied upon by my associates, it is expressly declared "that if the grantors had been a party to the suit to set aside the conveyance, and had not set up the claim of homestead exemption they would have been concluded by the decree of sale, and could not have set it up afterwards."

Our own reports abound with decisions, which bear on this question, and in my opinion ought to be conclusive of it, none of which are noticed by my associates. In the case of *Stanley v. Ehrman*, 83 Ala. 215, the appellee sought to condemn the lands of the wife for a debt due for articles purchased for the comfort and support of the family. After the judgment of condemnation and order of sale of the land, *but before the sale*, the claim of homestead exemption was interposed. The court held that the claim was waived. Says the court: "Had a valid claim of homestead exemption been made in the suit during the progress, it would have been sufficient, to defeat the order of sale, but if not made until after the order of sale, it will be held to have been waived." There are many decisions where lands have been levied upon by a constable, for want of personal property, and application made to the circuit court for an order of sale, in which it was held that unless the exemption was claimed, before the order of sale was entered, the claim came too late—*Toenes v. Moog*, 78 Ala. 558; *Randolph v. Little*, 62 Ala. 396; *Sherry v. Brown*, 66 Ala. 51. The decisions in our State which hold that a claim of exemptions may be made before sale, refer to sales under executions which are to be levied generally on the estate of the debtor, and provision is made for such claims by the statute before sale,

[Kennedy. v. First National Bank of Tuscaloosa.]

but there is no statute, nor has there heretofore been a rule, in this State, which permits the claim to be made after decree of condemnation in a proceeding to reach and condemn specific property, or any other proceeding in the nature of a proceeding *in rem*. A claim of exemption, which does not exist when a creditor's bill is filed cannot be acquired afterwards to defeat the creditor. If he cannot claim it then, he cannot claim it under a subsequently acquired right. This is universal law. But the foundation of all these principles is the extent and conclusiveness of a decree upon the parties to the suit. As was said in *Tankersly v. Pettus*, 71 Ala. 179, Brickell, C. J.: "No principle of law is better settled than that the judgment of a court of competent jurisdiction, rendered on the merits, as between the parties, is final and conclusive of the matter in controversy. The principle applies alike to the decrees of the court of chancery, and the judgments of the courts of law. * * * The enquiry is, not what the parties actually litigated, but what they might and ought to have litigated in the former suit. * * * A judgment is conclusive of the entire subject matter of controversy—of all that properly belongs to it—of all that might and ought to have been litigated and decided." I attach no importance to the argument that Jno. S. Kennedy could not in the same answer "in one breath affirm the validity of his conveyance and deny it." The bill sought to condemn the lands. The land was the subject matter and the issue was whether they had been fraudulently conveyed, and whether they were liable or not. The debtor and his grantees could have answered in defense that a portion embraced exempt property, and as to such the conveyance was not fraudulent. It was a fact which could and ought to have been litigated and was within the issue made by the bill. As was said in the case of *Tankersley, supra*, p. 186: "For the bar of a decree, if litigation is quited, and parties are not twice vexed for the same cause, must extend to all facts which are necessarily involved in the issue."

The Chief Justice Brickell and Associate Justice Head, having been of counsel, do not sit. I regret that the questions involved must be determined by less than a majority of the whole court. It is my opinion, after careful consideration, that the petitioner is not entitled

to claim an exemption, and his application for a rehearing should be denied. My associates have reached a different conclusion, which controls the determination of the case. It results from their opinion that the application for a rehearing is granted, the cause is reversed and remanded, that the petition for exemption may be disposed of in accordance with the opinion of the court.

Reversed and remanded.