# Yates v. Adams.

*Bill in Equity to Condemn the Proceeds of Lands Fraudulently Conveyed.*

1. *Homestead exemption allowed in the proceeds of property fraudulently conveyed.*—Where the husband makes a voluntary conveyance of lands not his homestead, to his wife, who sells the same and invests the proceeds in other lands in her own name, which are thereafter occupied as the homestead of the husband and wife, the husband may claim a homestead exemption in the latter property, when a bill is filed by his existing creditors to subject it as the proceeds of the property fraudulently conveyed.

APPEAL from Birmingham City Court.
Tried before Hon. WM. W. WILKERSON.
The facts are stated in the opinion.   The court below decreed that complainant was not entitled to relief, and dismissed the bill.   The decree is assigned as error.

E. E. BLACKBURN, for appellant.—If the grantee of property in a fraudulent conveyance sells or transfers it, the proceeds of the sale or the property for which it was transferred can be followed and subjected to the claims of the existing creditors of the grantor.—*Dickinson v. National Bank of Republic,* 98 Ala. 546; Bump on Fraud. Con., 608; *Lockard v. Nash,* 64 Ala. 387.   The case at bar is much stronger for complainant than that of *Kennedy v. First National Bank,* 18 So. 396, because Adams never did at any time own the lot he is now claiming as a homestead, nor was the lot he conveyed to his wife ever at any time impressed with the character of a homestead.   Complainant is seeking by her bill to follow up and subject the proceeds of a lot or parcel of land which Carrie W. Adams took and held as trustee *in invitum* for her and the other existing creditors of A. A. Adams.

CABANISS & WEAKLEY, *contra.*—The premises in con-

troversy being the homestead of both A. A. Adams and
Carrie W. Adams and the homestead right having been
acquired before complainant's bill was filed and before
any lien attached, are exempt to the extent of two thous-
and dollars.—*First National Bank v. Kennedy,* 107 Ala.
170; S. C. 21 So. 389; *Reeves v. Peterman,* 109 Ala. 366;
*Kelly v. Connell,* 110 Ala. 543; *Pollak v. McNeill,* 100
Ala. 203; *Hodges v. Winston,* 95 Ala. 514; *Caldwell v.
Pollak,* 91 Ala. 357; *Fellows v. Lewis,* 65 Ala. 343. The
extent of the homestead is not to be determined from the
fee simple value of the land, but from the value of the
homestead claimant's interest therein, and in deter-
mining whether the homestead exceeds in value two
thousand dollars the amount of any and all prior in-
cumbrances are to be deducted from the whole value
thereof.—Code 1886, §2507; *Hoy v. Anderson* (Neb.),
58 N. W. 125; *Lozo v. Southerland,* 38 Mich. 168; *Ray
v. Adams,* 45 Ala. 168; *Bank v. Elliott,* 53 Mich. 256;
*Frick v. Ketels,* 22 Pac. 580; *Harris v. Allen,* 10 S. E.
127; *Flowers v. Miller,* 16 S. W. 705; *McArthur v. Mar-
tin,* 23 Minn. 74; *Steiner v. McDaniel,* 110 Ala. 409;
Thompson on H. and E., paragraph 170; *Marr v. Lewis,*
31 Ark. 203. In determining questions of exemption
and contests thereof, the right being clear and of consti-
tutional guaranty, even though there is no machinery
provided for such claim or contest in the chancery court,
such court grants relief nevertheless according to its
own peculiar methods.—*Tonsmere v. Buckland,* 88 Ala.
314; *Kennedy v. Bank, supra; Zelnicker v. Brigham,*
74 Ala. 598. A claim of exemption might be made in an
answer to a bill in equity and it is not necessary to file
any declaration in writing, asserting such exemption.—
*Zelnicker v. Brigham, supra; Allen v. Buchanan,* 97
Ala. 400; 3 Brick. Dig., page 492, §40; *Reeves v. Peter-
man, supra; Kelly v. Connell, supra.* Complainant
having acquired no lien on the property first conveyed
by A. A. Adams to Carrie W. Adams, she had a right to
convert the same into homestead property which was
thereafter exempt so long as they occupied the same as
a homestead from the payment of either her debts or
those of A. A. Adams.—*Reeves v. Peterman, supra; Fin
v. Krut,* 34 S. W. 1013; Thompson on H. & E., §305,
note 3.

HEAD, J.—The views of the other members of the court upon the validity of the claim of homestead asserted, in this case, being the contrary of those of the writer, the following discussion of the question against the validity of the claim, indicates the opinion of the writer only. The other members of the court hold that A. A. Adams was entitled to the exemption claimed and such will be the decree of the court.

The case is a bill in equity to condemn proceeds of property alleged to have been fraudulently conveyed, in the possession of the alleged fraudulent grantee.

A. A. Adams being indebted to the complainant, and owing other debts, on May 26, 1890, conveyed to his wife, Carrie W. Adams, by deed, a lot of land on 13th street, in Birmingham, Ala., which he owned. The consideration recited in the deed was $3,000 in hand paid. There was, in fact, no valuable consideration at all. The property was, at that time, subject to the payment of Adams' debts. It was not, and had never been, his homestead. In July following, Adams and wife conveyed, by deed, one-half of this lot to James R. Adams for the recited consideration of $2,250, in hand, and about the same time James R. Adams and wife conveyed, by deed, to said Carrie W. Adams another lot, located in another part of the city known as South Highlands, for the recited consideration of $2,500. In fact, however, these conveyances were, respectively, made in consideration of each other, operating as an exchange of lots. To make up the difference between the estimated values of the two lots as denoted by the considerations recited, A. A. Adams transferred to James R. a half interest he owned in some lots in Calera, valued at $250. Very shortly after this exchange, Mrs. Adams erected a dwelling house on the lot obtained by her, at a cost of some $1,800, the money being raised by selling the other half of the 13th street lot for $800, and borrowing $1,000, which was secured by mortgage on the South Highlands lot. Upon completion of the house, in the latter part of 1890, she moved into it, as her home, and has since continuously occupied it as such, her husband living there with her.

The bill seeks to condemn this lot—the South Highlands lot—as being the proceeds of the 13th street property, voluntarily conveyed to Mrs. Adams, as aforesaid,

and the only resistance offered to the relief sought, is a claim of homestead exemption interposed by the husband, A. A. Adams, claiming that by virtue of his occupation of it, with his wife, as his dwelling place, which commenced on the completion of the house, before this bill was filed, and the fact, as he alleged and proved, that the property was not, at the hearing, worth as much as $2,000, after deducting the amount of the mortgage encumbrance, the principal of which was still unpaid, he was entitled to claim and hold the same under the homestead exemption law.

We think, upon principles recognized and established by this court, and a proper view of the marital relation, so far as concerns the separate property of the wife under present statutes, the claim of exemption can not be allowed. The property was never impressed with a homestead character in favor of Adams. The lot he conveyed to Mrs. Adams was not his homestead and had never been. It was subject to the claim of his creditors. He conveyed it vountarily to Mrs. Adams, in that plight, and she took it as upon a trust *in invitum* for the use of those creditors if they should see proper to enforce the trust. The right of the creditors to proceed in equity to condemn the estate, grew out of, and was created by, the execution of the constructively fraudulent deed; was coincident with such execution, and irrevocable. Nothing that either the grantor or grantee could afterwards do could affect or impair the rights of the creditors so created and fixed by the conveyance, except to sell to a *bona fide* purchaser for value without notice of the character of the consideration. These principles are to be found stated in *Lockard v. Nash*, 64 Ala. 385, where BRICKELL, C. J., speaking for the court, in reference to a gift by a debtor to his son, said: "An existing creditor can compel the application of the money received to the satisfaction of the donor's debt. The right of the creditor does not spring out of any contract between him and the donee. It arises by operation of law, upon the broad principle that justice must precede generosity, and that the claims of creditors, who have parted with a valuable consideration, must be satisfied before the claims of others, resting merely on affection or generosity, can be recognized. The money derived from the sale of the cotton was money held by the donee

in trust for existing creditors. The liability of applying it to their satisfaction arose, and was complete, on the day it was received. The trust was implied, or constructive; it was created by the law; it was imposed on the donee *in invitum.*" And he went on to state that it was a trust to which the statute of limitations was applicable.

The same principle was stated, with more elaboration, in *Dickinson v. National Bank of the Republic,* 98 Ala. 546. We there held that the fraudulent grantee is construed to be a trustee for creditors, and as such, responsible for his acts in disposing of the property conveyed to him. We held, that if he had parted with the property, he must account for its value, which liability could be enforced by personal decree and execution; and that the proceeds of the property may be followed into any property in which they have been invested, so far as they can be traced. As we there stated, the rules laid down are consonant with the authorities generally, and meet our approval. They must be regarded as the established doctrine of this court. See also the reasoning and authorities stated in *Kennedy v. First National Bank,* 107 Ala. 170, where it was held that a grantor in a fraudulent conveyance of property, in which the right of homestead existed at the time of the conveyance, was entitled to assert the homestead right in a suit by creditors to condemn the property.

Adams, having no homestead right in the property, at the time of his conveyance (which under the authority of *Kennedy's Case, supra,* might have given him the right to claim the exemption he now claims), could not, and, indeed, did not attempt to, acquire one thereafter. Mrs. Adams, being as against him, the absolute owner, converted the property into other property, in which he had no right, title or interest, nor legal or equitable right of possession or enjoyment whatever; and it goes without saying, that in such property, he could have no homestead right under the statutes of this State. His occupancy of it as a dwelling place, with his wife, was not by virtue of any proprietary interest, of any character, in him, but, in a legal sense, by the mere permission or sufferance of his wife. By such occupancy he acquired no more right of homestead, under our exemption laws, than if he had, by the permission of the owner,

lived with, and in the house of, a stranger. Suppose Mrs. Adams had exchanged the lot conveyed to her by her husband for the furniture with which her house was supplied, the use and benefit of which her husband enjoyed by living there with her, what would be said of a claim on his part to have $2,000 worth of the furniture set apart to him as exempt? The present case is precisely the same in principle.

The distinction must be borne in mind between this case and those in which the grantor in the fraudulent conveyance had a right of homestead, at the time of the conveyance, by reason of his occupancy of the property as such. If he had such right, then he may claim homestead when the conveyance is assailed by creditors; if he had no such right; if the property was then subject to the claims of creditors, the conveyance was, necessarily, void *in toto* as against creditors, and there could be no homestead right for him to assert.

Following the views of the other members of the court, the decree of the city court is affirmed.

Affirmed.